IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GERALD WALPIN, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE CORPORATION FOR NATIONAL AND )<br>COMMUNITY SERVICE, NICOLA O. )<br>GOREN, as Acting Chief Executive Officer )<br>thereof, RAYMOND LIMON, as Chief Human )<br>Capital Officer thereof, and FRANK TRINITY, )<br>as General Counsel thereof, )<br><br>Defendants. ) | Civil Action No. 1:09-1343 (RWR) |

## MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), defendants hereby move

the Court to dismiss this action for lack of subject matter jurisdiction and for failure to state a

claim upon which relief may be granted, for the reasons set forth in the accompanying

Memorandum in support of this motion.

October 26, 2009

Respectfully submitted,
TONY WEST
Assistant Attorney General
CHANNING D. PHILLIPS
Acting United States Attorney
IAN HEATH GERSHENGORN
Deputy Assistant Attorney General
SUSAN K. RUDY
Assistant Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER

U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GERALD WALPIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:09-1343 (RWR) |
| ) | |
| THE CORPORATION FOR NATIONAL AND ) | |
| COMMUNITY SERVICE, NICOLA O. ) | |
| GOREN, as Acting Chief Executive Officer ) | |
| thereof, RAYMOND LIMON, as Chief Human ) | |
| Capital Officer thereof, and FRANK TRINITY, ) | |
| as General Counsel thereof, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ..............................................................................................................1

STATUTORY BACKGROUND: INSPECTOR GENERAL ACT ...............................................3

FACTUAL AND PROCEDURAL BACKGROUND ..................................................................6

ARGUMENT .....................................................................................................................8

    I.        PLAINTIFF HAS NO VIABLE CLAIM UNDER THE MANDAMUS ACT .......8

           A.      Plaintiff Cannot Establish a Clear Right to Relief .......................................9

                 1.      The IG Act Does Not Vest Plaintiff With Any Individual
                        Right to Continued Employment .....................................................9

                 2.      Plaintiff Has No Clear Right to Relief Because the President
                        Complied With the IG Act's 30-Day Notice Requirement ...........13

           B.      Even if Plaintiff Could Establish a Clear Right to Relief, Neither
                the IG Act Nor Any Other Law Imposes a Clear Ministerial
                Duty on Defendants to Reinstate Plaintiff .................................................18

           C.      Even If the Court Concluded that Mandamus Relief Might Be
                Available, It Should Decline to Grant It Here Because Such Relief
                 Would Not Serve the Intended Purpose of the IG Act ............................23

    II.       THE DECLARATORY JUDGMENT ACT PROVIDES NO
          INDEPENDENT CLAIM ...................................................................................24

CONCLUSION .................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

13th Reg'l Corp. v. Dep't of Interior, 654 F.2d 758, 760 (D.C. Cir. 1980) ................................18

Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227 (1937) ..................................24

Alexander v. Sandoval, 532 U.S. 275 (2001) ..............................................................................25

Am. Fed'n of Gov't Employees v. Hawley, 543 F. Supp. 2d 44 (D.D.C. 2008) ...................13, 25

Armstrong v. Bush, 924 F.2d 282 (D.C. Cir. 1991) ....................................................................20

Ass'n of Home Builders v. U.S. Army Corp. of Eng'rs., 417 F.3d 1272 (D.C. Cir. 2005) ..........12

Buaiz v. United States, 471 F. Supp. 2d 129 (D.D.C. 2007) .......................................................18

C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth., 310 F.3d 197 (D.C. Cir. 2002) .......24

Carlucci v. Doe, 488 U.S. 93 (1988) ...........................................................................................20

College Sports Council v. GAO, 421 F. Supp. 2d 59 (D.D.C. 2006) ....................................11, 17

Consol. Edison Co. v. Ashcroft, 286 F.3d 600 (D.C. Cir. 2002) ..............................................8, 18

Ctr. for Law & Educ. v. Dep't of Educ., 396 F.3d 1152 (D.C. Cir. 2005) ..................................12

Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council,
     485 U.S. 568 (1988) ...........................................................................................................15

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621 (D.C. Cir.1997) ...............................16

Gagliano v. Reliance Standard Life Ins. Co., 547 F.3d 230 (4th Cir. 2008) ...............................22

Gallucci v. Chao, 374 F. Supp. 2d 121 (D.D.C. 2005) ...............................................................24

Giddings v. Chandler, 979 F.2d 1104 (5th Cir. 1992) .................................................................12

Gonzaga Univ. v. Doe, 536 U.S. 273 (2002) ..............................................................................25

Guerrero v. Clinton, 157 F.3d 1190 (9th Cir. 1998) ...................................................................11

Handberry v. Thompson, 436 F.3d 52 (2d Cir. 2006) .................................................22

Hernandez-Avalos v. INS, 50 F.3d 842 (10th Cir. 1995) ...........................................12

*In re Cheney, 406 F.3d 723 (D.C.Cir.2005) (en banc) ...............................8, 18, 19, 23

Jackson v. Holder, No. 09-1453, 2009 WL 2382949 (D.D.C. July 31, 2009) ...........18

Jarecki v. United States, 590 F.2d 670 (7th Cir. 1979) ..............................................12

Kursar v. Transp. Sec. Admin., 581 F. Supp. 2d 7 (D.D.C. 2008) .............................17

Lozada Colon v. U.S. Dep't of State, 170 F.3d 191 (D.C. Cir. 1999) ........................18

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) .................................................12

Morrison v. Olson, 487 U.S. 654 (1988) ...............................................................21, 22

Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479 (1998) ...................12

*Nat. Res. Def. Council, Inc. v. Hodel, 865 F.2d 288 (D.C. Cir. 1988) ...............11, 17

N.Y. State Bar Ass'n v. FTC, 276 F. Supp. 2d 110 (D.D.C. 2003) ...........................16

Oliver v. U.S. Postal Serv., 696 F.2d 1129 (5th Cir. 1983) .......................................14

Power v. Barnhart, 292 F.3d 781 (D.C. Cir. 2002) .....................................................8

Raditch v. United States, 929 F.2d 478 (9th Cir. 1991) .............................................22

Roberts v. U.S. Dep't of Justice, 366 F. Supp. 2d 13 (D.D.C. 2005) .........................17

Schilling v. Rogers, 363 U.S. 666 (1960) ...................................................................24

Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.,
    502 F. Supp. 2d 50 (D.D.C. 2007) ...............................................................24, 25

Shurtleff v. United States, 189 U.S. 311 (1903) ...................................................21, 24

Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950) .................................24

Swan v. Clinton, 100 F.3d 973 (D.C. Cir. 1996) ...............................15, 18, 20, 21, 24

Tex. Border Coal. v. Napolitano, 614 F. Supp. 2d 54 (D.D.C. 2009) ..........................................25

The Nat. Fed'n of The Blind v. Spellings, 562 F. Supp. 2d 74 (D.D.C. 2008) .............................11

United States v. Clarke, 628 F. Supp. 2d 1 (D.D.C. 2009) .....................................................8, 18

United States v. Fausto, 484 U.S. 439 (1988) ........................................................................17

Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897 (D.C. Cir.1996) ..................18, 19

West v. Jackson, 538 F. Supp. 2d 12 (D.D.C. 2008) ..............................................................8, 18

Wilbur v. United States, 281 U.S. 206 (1929) ...........................................................................18

Williams v. Chu, No. 07-901, 2009 WL 2475168 (D.D.C. Aug. 13, 2009) ................................16

## STATUTES

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 ...............................................12, 17

5 U.S.C. § 702 .......................................................................................................................18

5 U.S.C. chapter 75 ...............................................................................................................15

5 U.S.C. § 7511 .....................................................................................................................17

Inspector General Act of 1978, as amended, 5 U.S.C. app. 3, §§ 1-13 ...................................3, 7

5 U.S.C. app. 3 § 2 ...............................................................................................................3, 4

5 U.S.C. app. 3 § 3............................................................................................................. passim

5 U.S.C. app. 3 § 12 .............................................................................................................3, 4

28 U.S.C. § 596 ..................................................................................................................21, 22

28 U.S.C. § 1331 .....................................................................................................................7

Mandamus Act, 28 U.S.C. § 1361 ................................................................................1, 7, 8, 19

Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 .........................................................3, 19

Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat. 1101 (1978) ...................................4

Civil Service Reform Act ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978) .......................17

**LEGISLATIVE MATERIALS**

H.R. 928 § 2(a) .........................................................................................................................5

H. Rep. No. 110-354 (2007), reprinted in 2008 U.S.C.C.A.N. 1795 ......................................5, 11

S. Rep. No. 95-1071 (Aug. 8, 1978), available at 1978 U.S.C.C.A.N. 2676, 2701 ................4, 20

S. Rep. No. 110-262 (2008) (discussing S. 2324),
      available at LEXSEE 110 S. Rpt. 262 ............................................................5, 9, 17, 20

153 Cong. Rec. H11182-01, H11184, 2007 WL 2872516 (Oct. 3, 2007)
      (statement of Rep. Sessions) ................................................................................5

153 Cong. Rec. S14193-01, S14199, 2007 WL 3307911
      (statement of Sen. Lieberman) (Nov. 8, 2007) .......................................................9-10, 17

154 Cong. Rec. H10222-02, 2008 WL 4373160 (Sept. 27, 2008) ................................................5

**ADMINISTRATIVE MATERIALS**

Alston v. SSA, 95 M.S.P.R. 252 (M.S.P.B. 2003) .......................................................................15

Ghaly v. U.S. Dep't of Agric., 228 F. Supp. 2d 283 (S.D.N.Y. 2002) .......................................15

LaMell v. Armed Forces Ret. Home, 104 M.S.P.R. 413 (M.S.P.B. 2007) ...................................15

## INTRODUCTION

Invoking the extraordinary remedy of mandamus, plaintiff, a former presidential appointee who served as Inspector General of the defendant Corporation for National and Community Service ("CNCS"), seeks to compel defendants to reinstate him to that position despite the fact that the President has removed plaintiff from office.  As the basis for his claimed entitlement to reinstatement, plaintiff relies on a provision in the Inspector General Act ("IG Act"), 5 U.S.C. app. 3 § 3(b), that requires the President to notify Congress in writing of the reasons for the President's removal of an Inspector General 30 days before the removal is implemented.

Plaintiff's claims should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.  In particular, plaintiff's claim under the Mandamus Act, 28 U.S.C. § 1361, must fail because plaintiff cannot establish that this is one of those "extraordinary situation[s]" in which mandamus relief is appropriate.

First, plaintiff cannot establish a "clear right to relief."  Section 3(b) of the IG Act provides that "[a]n Inspector General may be removed from office by the President.  If an Inspector General is removed from office or is transferred to another position or location within an establishment, the President shall communicate in writing the reasons for any such removal or transfer to both Houses of Congress, not later than 30 days before the removal or transfer."  Both the plain text of the statute and its legislative history demonstrate that the 30-day notice requirement was intended to facilitate a political dialogue between the President and Congress over the appropriateness of removal, not to vest any particular Inspector General with an individual right to continued employment.  Nothing in the Act's notice provision establishes that plaintiff has a "clear right" to retain his position that could be vindicated through mandamus.

- 1 -

Moreover, even if the Court were to conclude that the Act *does* establish a right to employment of the kind plaintiff asserts, plaintiff *still* has no clear right to relief here.  Plaintiff was removed from office on July 18, 2009.  More than 30 days earlier, on June 11, 2009, the President placed plaintiff on paid administrative leave and informed Congress that he intended to remove plaintiff from office because he no longer had fullest confidence in plaintiff's ability to serve.  On June 16, 2009, the White House provided additional information to Members of Congress who expressed interest in plaintiff's upcoming removal.

Plaintiff argues that the President failed to comply with the Act's notice provision, but those arguments are meritless on their face.  Plaintiff contends, for example, that the Act required the President to provide 30 days' notice prior to placing plaintiff on paid administrative leave.  Not so.  The Act requires notice only for "removal" or "transfer," and placement on paid administrative leave is neither.  Nor is there merit to plaintiff's argument that the President's notice to Congress was insufficiently detailed.  The President's communication fully satisfied the notification provision of the Act, and the Act leaves it to Congress – not to plaintiff or this Court – to seek additional dialogue regarding the removal if Members of Congress deem it appropriate.

Second, plaintiff cannot establish that defendants have the "clear duty" to reinstate plaintiff.  The Act's 30-day notice requirement sets forth only a procedural prerequisite to removal by the President, and nowhere specifies the consequences for any failure to provide such notice.  Here, as noted, the President complied fully with the Act's notice requirement.  Even if the President had failed to comply with that requirement, however, the Act provides no suggestion – much less a clear indication – that Congress intended the President's subsequent removal of an Inspector General to be deemed null and void or that Congress intended that

reinstatement would be required while the President corrected any perceived deficiencies in the initial notice.  The IG Act thus cannot be interpreted to impose a "clear duty" on CNCS officers to reinstate an Inspector General where the 30-day notice requirement has not been satisfied.

Third, even if the Court were to credit plaintiff's assertions and deem mandamus relief available, it should in its discretion decline to grant such relief here.  The President and Members of Congress have already engaged in the precise dialogue that the IG Act's removal provision was meant to encourage.  Thus, the purpose of the Act would not be served by granting plaintiff's requested relief.  Mandamus relief reinstating plaintiff as Inspector General would merely require the President to communicate once again his decision to Congress, and would extend plaintiff's tenure as Inspector General for no more than 30 days, during which time plaintiff might again be put on paid administrative leave.

Finally, the lack of a viable Mandamus Act action also precludes plaintiff's claim under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.  As is well established, the DJA provides no independent basis for jurisdiction, nor does it provide a cause of action where no independent right to a remedy has been established.  This action is therefore subject to dismissal in its entirety.

## STATUTORY BACKGROUND: INSPECTOR GENERAL ACT

The Inspector General Act of 1978, as amended, 5 U.S.C. app. 3, §§ 1-13, provides for an Office of Inspector General ("OIG") to be attached to each "establishment" listed in 5 U.S.C. app. 3 § 12(2) – including CNCS.  Id. § 2.  The OIG is charged with  "conduct[ing] and supervis[ing] audits and investigations relating to the programs and operations of the establishment[]"; "recommend[ing] policies" designed to "promote economy, efficiency, and effectiveness" of and to "prevent and detect fraud and abuse" in these programs and operations; and "provid[ing] a

means for keeping the head of the establishment and Congress fully informed about problems and deficiencies" in these programs and operations.  Id.

Each OIG of an "establishment" listed in § 12(2) is headed by an Inspector General "who shall be appointed by the President, by and with the advice and consent of the Senate."  Id. § 3(a).  The IG Act further provides that "[a]n Inspector General may be removed from office by the President."  Id. § 3(b).  Prior to its amendment in 2008, the Act provided that "[t]he President shall communicate the reasons for any such removal to both Houses of Congress."  Inspector General Act of 1978, Pub. L. No. 95-452, § 3(b), 92 Stat. 1101 (1978).[1]  In 2008, Congress passed the Inspector General Reform Act of 2008 ("Reform Act"), Pub. L. No. 110-409, 122 Stat. 4302 (2008).  The Reform Act amended the limited notice requirement in the second sentence of § 3(b) as follows:

> If an Inspector General is removed from office or is transferred to another position or location within an establishment, the President shall communicate in writing the reasons for any such removal or transfer to both Houses of Congress, not later than 30 days before the removal or transfer.  Nothing in this subsection shall prohibit a personnel action otherwise authorized by law, other than transfer or removal.

5 U.S.C. app. 3 § 3(b).

Two aspects of the Reform Act are noteworthy.  First, the notice requirement it imposed

_____

[1]The 1978 Senate Report provided no indication that any particular level of explanation by the President was required, and while the committee expected that "there would be some justification – other than the desire to remove an [Inspector General] who is performing his duties in a way which embarrasses the executive – to warrant the removal action," the committee expressly stated that the removal provision did not "require[] the President to have 'cause' before removing" an Inspector General.  S. Rep. No. 95-1071 (Aug. 8, 1978), available at 1978 U.S.C.C.A.N. 2676, 2701.  Indeed, the committee explained that, "unlike a provision which permitted the President to remove an official only for cause, requiring communication by the President to Congress, after the fact of removal, does not impair the President's right to remove an executive official."  Id.

does not apply to all personnel actions relating to Inspector Generals; instead, it applies only to "transfer or removal."  Second, the Reform Act did not impose a "for-cause" restriction on the President's power to remove an Inspector General, relying instead on congressional oversight to address and deter removals and transfers perceived to be improper.  As described by the Senate Committee on Homeland Security and Governmental Affairs, the 30-day notice requirement "allow[s] for an appropriate dialogue with Congress in the event that the planned transfer or removal is viewed as an inappropriate or politically motivated attempt to terminate an effective Inspector General."  S. Rep. No. 110-262 (2008) (discussing S. 2324), available at LEXSEE 110 S. Rpt. 262.  The prospect of such a dialogue was expected to operate "as a useful deterrent against improper intimidation or dismissal." Id.  As the committee observed, although the notice requirement was intended to "encourage useful communication between Congress and the Executive Branch on IG performance," and to "serve as an effective deterrent against improper terminations," the provision "does not alter the President's ultimate authorities with respect to Executive Branch employees."  Id.[2]

---

[2]An earlier version of H.R. 928, the bill that became the Reform Act, included a proposal to limit the acceptable grounds for an Inspector General's removal to "permanent incapacity," "inefficiency," "neglect of duty," "malfeasance," and "conviction of a felony or conduct involving moral turpitude."  H.R. 928 § 2(a), available in H. Rep. No. 110-354 (2007), reprinted in 2008 U.S.C.C.A.N. 1795.  The bill also contained a seven-year term limit for Inspectors General.  H.R. 928 § 2(b).  The Office of Management and Budget issued a Statement of Administration Policy expressing concern that these proposed provisions would "intru[de] on the President's removal authority and his ability to hold IGs accountable for their performance."  153 Cong. Rec. H11182-01, H11184, 2007 WL 2872516 (Oct. 3, 2007) (statement of Rep. Sessions). Ultimately, those provisions were deleted from the bill.  154 Cong. Rec. H10222-02, 2008 WL 4373160 (Sept. 27, 2008).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff assumed the position of Inspector General of CNCS on January 6, 2007, having been appointed by President George W. Bush with the advice and consent of the Senate. Am. Comp. ¶ 2. On June 11, 2009, President Obama transmitted letters to Vice President and President of the Senate Joseph R. Biden, Jr. and Speaker of the House of Representatives Nancy Pelosi in order to notify Congress that he intended to remove plaintiff from the position of Inspector General, "effective 30 days from today," because he no longer had "fullest confidence" in plaintiff. Am. Comp. ¶ 30; Letter of June 11, 2009 from President Obama to President of the Senate Biden (attached hereto as Exhibit A); Letter of June 11, 2009 from President Obama to Speaker of the House Pelosi (attached hereto as Exhibit B).

Also on June 11, 2009, Senator Charles E. Grassley wrote to the President indicating that he had learned independently of the President's intent to remove plaintiff and expressing concern that the 30-day notice requirement of the Inspector General Reform Act had not been satisfied. Am. Comp. ¶ 32; Letter of June 11, 2009 from Senator Grassley to President Obama (attached hereto as Exhibit C). Gregory B. Craig, Counsel to the President, responded to Senator Grassley's letter, informing the Senator that the President had "notified Congress of his intent to remove Inspector General Walpin earlier today." Am. Comp. ¶ 33; Letter of June 11, 2009 from Mr. Craig to Senator Grassley (attached hereto as Exhibit D). Mr. Craig further explained that plaintiff had been suspended, with pay, pending his removal, and that the suspension was consistent with the IG Act, citing in particular the IG Act provision that "'[n]othing in this subsection shall prohibit a personnel action otherwise authorized by law, other than transfer or removal.'" Id. (quoting 5 U.S.C. app. 3 § 3(b)).

- 6 -

In response to further communications from Members of Congress, the White House provided these Members with additional information regarding the reasons for plaintiff's removal. Am. Comp. ¶ 35.  A June 16, 2009, letter from Norman L. Eisen, Special Counsel to the President, to Senator Joseph I. Lieberman and Susan M. Collins, for example, stated that the bipartisan Board of CNCS had requested a review of plaintiff following a Board meeting at which plaintiff was "confused, disoriented, unable to answer questions and exhibited other behavior that led the Board to question his capacity to serve."  See id.; Letter of June 16, 2009 from Mr. Eisen to Senators Lieberman and Collins (attached hereto as Exhibit E).  The letter also stated that, upon review, it was determined that plaintiff had, among other things, "exhibited a lack of candor in providing material information to decisionmakers."  Id.  Plaintiff was ultimately removed from his position on July 18, 2009, more than 30 days following the June 11 notice to Congress.[3]

Plaintiff filed suit in this Court on July 17, 2009, and filed an Amended Complaint on July 24, 2009, asserting jurisdiction pursuant to 28 U.S.C. § 1331; the Inspector General Act, 5 U.S.C. app. 3 §§ 1-13; and the Mandamus Act, 28 U.S.C. § 1361.  Am. Comp. ¶ 12.  Plaintiff principally seeks a writ of mandamus (as well as declaratory relief) to compel defendants to restore him to the position of Inspector General.  Am. Comp. at 20.

---

[3]Plaintiff's Amended Complaint omits the precise date of his official removal, but nothing in the Amended Complaint controverts the President's statement in his June 11, 2009 letters to Congress, incorporated by reference into plaintiff's complaint, that plaintiff's removal would become effective 30 days from that date.  See exs. A & B.  In his filing in support of his motion for a preliminary injunction, plaintiff acknowledges that in fact his removal did not take effect until July 18, 2009.  See Plaintiff's Memorandum in Support of Preliminary Injunction (dkt. # 12-2) at 4 n.1 (acknowledging that plaintiff was on paid administrative leave until July 18).

**ARGUMENT**

**I.    PLAINTIFF HAS NO VIABLE CLAIM UNDER THE MANDAMUS ACT**

Plaintiff cannot establish a right to mandamus relief.  Mandamus is a "drastic" remedy that is "available only in 'extraordinary situations,'" and is "hardly ever granted."  In re Cheney, 406 F.3d 723, 729 (D.C.Cir.2005) (en banc); see also Consol. Edison Co. v. Ashcroft, 286 F.3d 600, 605 (D.C. Cir. 2002).  Although the Mandamus Act provides that "'[t]he district court shall have jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff,'" West v. Jackson, 538 F. Supp. 2d 12, 21-22 (D.D.C. 2008) (quoting 28 U.S.C. § 1361), "[j]urisdiction over actions 'in the nature of mandamus' under § 1361 . . . is strictly confined."  In re Cheney, 406 F.3d at 729.  In order to obtain mandamus relief, "[t]he party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable."  Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002) (internal quotation omitted).  A plaintiff may demonstrate entitlement to this remedy only by showing that "(1) he has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  West, 538 F. Supp. 2d at 23.  Even where a plaintiff succeeds in showing that all three elements of a mandamus action are satisfied, "whether the extraordinary remedy of mandamus should issue is discretionary" with the court.  United States v. Clarke, 628 F. Supp. 2d 1, 10 (D.D.C. 2009) (citing In re Cheney, 406 F.3d at 729).  Here, as discussed below, plaintiff can establish neither a clear right on his part, nor a clear duty on the part of defendants, and mandamus relief is unwarranted as a discretionary matter as well.

- 8 -

### A.      Plaintiff Cannot Establish a Clear Right to Relief

Plaintiff cannot establish the requisite "clear right to relief" for at least two reasons.  First, the Act provides him with no individual right to continued employment when notice is alleged to be inadequate.  Second, in any event, even taking the allegations set forth in plaintiff's Amended Complaint as true, there is no doubt that the Act's notice requirement was satisfied here.

### 1.      The IG Act Does Not Vest Plaintiff With Any Individual Right to Continued Employment

Central to plaintiff's claimed clear right to relief is the notion that Congress intended the IG Act to guarantee him, in his capacity as Inspector General, some form of employment protection, thus vesting in him an individual right that he could claim was violated in the event the 30-day notice requirement is not met.  This notion is implausible.  The procedural nature of the requirement, its evident purpose to facilitate communication with Congress, and the lack of any indication in the statutory text or legislative history that Congress intended the requirement to be enforced by anyone other than Congress all confirm that the Act provides no right to continued employment.

Nothing in the text of the IG Act suggests that Congress intended the 30-day notice requirement to vest any individual rights in Inspectors General.  To the contrary, the statutory text is entirely consistent with the view, expressed in the 2008 Senate Report, that the purpose of the provision, as it was amended by the Reform Act, is to facilitate "an appropriate dialogue" and encourage "useful communication" between the two political branches of federal government, with the expectation that the prospect of such a dialogue would itself deter any President from initiating an improperly-motivated removal.  See S. Rep. No. 110-262; see also 153 Cong. Rec.

- 9 -

S14193-01, S14199, 2007 WL 3307911 (statement of Sen. Lieberman) (Nov. 8, 2007)

(recognizing the function of the 30-day notice requirement as "giv[ing] [Congress] time to

consider whether the administration was improperly seeking to displace an Inspector General for

political reasons because the IG was, in effect, doing his or her job too well").

   As described above, the plain language of the Act simply states that "[a]n Inspector

General may be removed from office by the President," and that "[i]f an Inspector General is

removed from office or is transferred to another position or location within an establishment, the

President shall communicate in writing the reasons for any such removal or transfer to both

Houses of Congress, not later than 30 days before the removal or transfer."  5 U.S.C. app. 3 §

3(b).  This language addresses the relationship between the President and Congress by setting a

time period within which any discussion about an Inspector General's removal or transfer may

take place.  Significantly, § 3(b) is silent on what should occur in the event that the President does

not adhere to the 30-day notice requirement.  Instead, the statute leaves any discussion of these

issues to the subsequent dialogue, if any, with Congress or its individual Members following the

President's initial notification.  This text and structure suggests that Congress intended the

interaction between the President and Congress, in exercising their respective political functions,

to safeguard the independence of the Inspector General role, rather than lawsuits brought by the

individuals who serve in this role.

   The absence of any specified level of detail in the statute further confirms that compliance

with the Act's provisions should be left to the political branches, not enforced by individual

Inspectors General.  The IG Act directs only that the President "communicate . . . the reasons" for

a removal decision, and does not specify how detailed the President's explanation should be, or

- 10 -

what would constitute an acceptable or unacceptable justification.[4]  Courts, including the D.C.

Circuit, have repeatedly held that when Congress has requested an explanation of some matter

from the Executive Branch, the determination of whether Congress should be satisfied with the

proffered explanation should be left to Congress, unless Congress has expressly set forth some

judicially manageable standard that would allow a court to make such a judgment.  Nat. Res. Def.

Council, Inc. v. Hodel, 865 F.2d 288, 318-19 (D.C. Cir. 1988) (holding that the congressional

reporting provision at issue "embodies a requirement that by its nature seems singularly

committed to *congressional* discretion in measuring the fidelity of the Executive Branch actor to

legislatively mandated requirements"); College Sports Council v. GAO, 421 F. Supp. 2d 59, 67

(D.D.C. 2006) (recognizing that Hodel was "clearly controlling" and required the conclusion that

the "sufficiency of the GAO's response to the requirements of [a statutory reporting requirement]

is for Congress to decide, not the Court"); see also Guerrero v. Clinton, 157 F.3d 1190, 1196 (9th

Cir. 1998) (declining to address whether the Executive had sufficiently complied with another

Congressional reporting requirement, explaining that, "[h]aving requested the report, Congress,

not the judiciary, is in the best position to decide whether it's gotten what it wants").

　　Moreover, plaintiff "cannot establish a clear right to relief without also establishing

standing," The Nat. Fed'n of The Blind v. Spellings, 562 F. Supp. 2d 74, 79 (D.D.C. 2008), and

the same considerations that indicate that compliance with the 30-day notice requirement is an

issue reserved to the political branches also suggest that plaintiff lacks standing to assert that the

requirement was violated.  The procedural nature of the notice requirement calls into play the

---

[4]Indeed, as noted above, Congress rejected an earlier version of the 2008 Reform Act, which would have included a list of acceptable causes for removal.  Cf. H. Rep. No. 110-354.

D.C. Circuit's observation that "[n]ot all procedural-rights violations are sufficient for standing; a plaintiff must show that 'the procedures in question are *designed* to protect some threatened concrete interest *of his* that is the ultimate basis of his standing.'"  Ctr. for Law & Educ. v. Dep't of Educ., 396 F.3d 1152, 1157 (D.C. Cir. 2005) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 573 n. 8 (1992)).  As explained, the IG Act's 30-day notice requirement was not "designed to protect" the interests of individual Inspectors General in continued employment. Along similar lines, it is also doubtful whether plaintiff's interest in preserving his tenure as Inspector General properly falls within the zone of interests to be protected by the IG Act.  Cf. Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 488 (1998); Nat'l Ass'n of Home Builders v. U.S. Army Corp. of Eng'rs., 417 F.3d 1272, 1287 (D.C. Cir. 2005). Indeed, the interest of an individual Inspector General in retaining his position may well conflict with the purposes of the IG Act.[5]

Simply put, the text and history of the IG Act make clear that the intended beneficiary of the Act's notice requirement is Congress, not individual Inspectors General.  The Act's 30-day "communication window" gives Congress the opportunity to respond to the President's notification by seeking more information from the President during the ensuing 30 days in the

---

[5]While the "zone of interests" requirement, as an aspect of prudential standing, is typically evaluated in the context of claims brought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, other jurisdictions have recognized that a plaintiff seeking to bring a claim pursuant to the Mandamus Act is also subject to this requirement.  E.g., Jarecki v. United States, 590 F.2d 670, 675 (7th Cir. 1979) (interpreting Mandamus Act's requirement that the duty to be compelled must be owed to the plaintiff as imposing a zone of interests limitation); see also Hernandez-Avalos v. INS, 50 F.3d 842, 844-45 (10th Cir. 1995) (applying the zone of interests test to Mandamus Act claims "makes good sense"); Giddings v. Chandler, 979 F.2d 1104, 1108 (5th Cir. 1992) (a plaintiff seeking relief under the Mandamus Act to compel a statutory duty owed to him must show he "falls within the 'zone of interest' of the underlying statute").

event Congress or its Members deem it appropriate to do so.  In contrast to personnel laws

designed to protect employee rights, the IG Act was not intended to safeguard the employment

interests of the individuals such as plaintiff who serve as Inspectors General; instead, as just

described, the IG Act's 30-day notice requirement was designed to allow a dialogue between the

Executive and Legislative Branches.  Cf. Am. Fed'n of Gov't Employees v. Hawley, 543 F. Supp.

2d 44, 48 (D.D.C. 2008) (holding that the Aviation and Transportation Security Act ("ATSA")

did not provide an individual right of action to TSA employees because the ATSA "was not

promulgated in order to protect the employment interests of federal screeners, but instead to

address national security and passenger safety").  Plaintiff's attempt to insert himself (and this

Court) in that inter-branch dialogue should be rejected.

     **2.**     **Plaintiff Has No Clear Right to Relief Because the President Complied With the IG Act's 30-Day Notice Requirement**

Even if a removed Inspector General could establish a clear right to relief in the event that

a President did fail to adhere to the IG Act's 30-day notice requirement, plaintiff cannot do so

here because, as is evident on the face of plaintiff's Amended Complaint and the documents

incorporated by reference therein, the President complied fully with the Act's 30-day notice

requirement.  Plaintiff was removed from office on July 18, 2009.  More than 30 days before that

removal, the President placed plaintiff on paid administrative leave and, in accordance with the

Act, communicated to Congress – via letters to President of the Senate Biden and Speaker of the

House Pelosi on June 11, 2009 – that the President intended to remove plaintiff from his position

as Inspector General because the President no longer had "fullest confidence" in plaintiff's ability

to serve in this post.  Exs. A, B.  The Special Counsel to the President provided additional

information to individual Members of Congress at their request on June 16, 2009.  Am. Comp. ¶ 35; ex. E.

Plaintiff makes two principal arguments to support his assertion that notice was insufficient.  Plaintiff first attacks the President's compliance with the Act by observing that 30 days' notice was not provided prior to plaintiff's placement on administrative leave.  Am. Comp. ¶¶ 36, 41.  The Act's notice requirement applies only to removals and to transfers "to another position or location" within the agency.  5 U.S.C. app. 3 § 3(b).  By limiting the requirement's application to these two personnel actions, Congress expressly indicated that other actions, such as placement on administrative leave, do not require 30 days' notice.  See id.  Despite plaintiff's assertions, placing an individual on administrative leave, where the individual remains in the same position, and continues to be paid, but is relieved of the obligation to perform any duties associated with the position, is not equivalent to removing the individual (which would involve terminating the individual's pay) or to transferring the individual to a different position within the agency (which would involve relocating the individual to a different assignment with different duties).

Ample precedent in analogous circumstances confirms this reading of the Act.  For example, in Oliver v. U.S. Postal Serv., 696 F.2d 1129, 1131 (5th Cir. 1983), the Fifth Circuit rejected a Postal Service employee's challenge to his placement on paid administrative leave at the time he was given 30 days' notice of his pending removal.  The Court of Appeals concluded that the applicable regulations "contain[ed] no express requirement that an employee be allowed to remain on the job," nor did they "explicitly prohibit the agency from placing an employee on paid leave during the thirty-day notice period."  Id.  Here, the IG Act's 30-day notice requirement

likewise contains no such requirement or prohibition.

Similarly, the U.S. Merit Systems Protection Board ("MSPB"), the administrative tribunal charged with hearing appeals brought by federal employees challenging disciplinary or otherwise adverse employment actions, has held that placement on paid administrative leave does not qualify as an adverse employment action under 5 U.S.C. chapter 75.  LaMell v. Armed Forces Ret. Home, 104 M.S.P.R. 413, 416 (M.S.P.B. 2007) ("[I]t is well-established that a period of paid administrative leave is not appealable to the [MSPB]." (citing Alston v. SSA, 95 M.S.P.R. 252 (M.S.P.B. 2003)); see also Ghaly v. U.S. Dep't of Agric., 228 F. Supp. 2d 283, 289 (S.D.N.Y. 2002).

In short, at most, administrative leave constitutes a "personnel action otherwise authorized by law, other than transfer or removal" – which the IG Act expressly excludes from its 30-day notice requirement.  See 5 U.S.C. app. 3 § 3(b).[6]

Plaintiff next suggests that the President's June 11, 2009 letters did not qualify as the communication required by the IG Act because they "provided no reasons" for plaintiff's removal. Am. Comp. ¶ 31.  However, these letters explained that the President had decided to remove plaintiff because "it is vital that [the President] have the fullest confidence in the appointees

_____

[6]Even if the terms "removal" and "transfer" were not so clear, the Court should refrain from interpreting these terms to impose a restriction on the President's ability to suspend an executive officer from performing his duties.  Such a restriction would implicate constitutional issues – specifically, whether such a restriction would impinge upon the President's constitutional obligation to ensure that the laws are faithfully executed.  The canon of constitutional avoidance weighs in favor of limiting the terms "removal" and "transfer" to their ordinary meanings. Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council, 485 U.S. 568, 575 (1988); cf. Swan v. Clinton, 100 F.3d 973, 988 (D.C. Cir. 1996) ("[T]he fact that extending removal protection to holdover Board officials might raise constitutional problems makes us all the more unwilling to infer such protection absent clear evidence that Congress intended it.").

serving as Inspector General," and "[t]hat is no longer the case with regard to this Inspector

General." Exs. A, B.[7]  The President's lack of confidence in plaintiff as Inspector General

qualifies as a "reason" within the meaning of the IG Act, 5 U.S.C. app. 3 § 3(b).

Indeed, plaintiff's real quarrel is not the absence of any reason, but instead his contention

that the President should have explained in detail why he lacked confidence in plaintiff.  See Am.

Comp. ¶ 31 (criticizing the President's allegedly "conclusory statement").  As discussed above,

however, the IG Act does not specify that the President should provide any particular level of

detail.  It is thus left to Congress to decide, upon receiving the President's initial communication,

whether to seek a further explanation before the President implements the planned removal.  Here,

as described above, several Members of Congress did ask for details, and the President, through

members of his staff, provided them.[8]  Am. Comp. ¶¶ 32-36.  The dialogue between the President

---

[7]Because plaintiff's Amended Complaint cites, quotes, and relies on these letters, as well as those attached hereto as Exhibits C, D, and E, see Am. Comp. ¶¶ 30, 32-33, 35-36 they are properly regarded as incorporated into plaintiff's Amended Complaint by reference and may therefore be considered by the Court in connection with defendants' motion to dismiss under Rule 12(b)(6) without converting the motion to one for summary judgment, as well as Rule 12(b)(1). See Williams v. Chu, No. 07-901, 2009 WL 2475168, at *2 (D.D.C. Aug. 13, 2009) (citing EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir.1997)); see also N.Y. State Bar Ass'n v. FTC, 276 F. Supp. 2d 110, 114 n.6 (D.D.C. 2003) ("[A] document is not 'outside' the complaint [and can therefore be considered on review of a motion to dismiss under Rule 12(b)(6)] if the complaint specifically refers to the document and if its authenticity is not questioned.").

[8]Plaintiff contends that these additional communications are irrelevant to the requirements of the Act because they were made to individual Members of Congress rather than to the President of the Senate and Speaker of the House.  Am. Comp. ¶ 36.  Indeed, plaintiff's Amended Complaint mentions a June 16 letter as the only written communication from the White House after June 11 and asserts that this letter was not sent to any Member of the House, id.; defendants treat these assertions as true for purposes of this motion only.  Even taking plaintiff's assertions as true, however, plaintiff's argument misses the point of the letter.  First, the letter confirms that the President willingly engaged in the dialogue contemplated by the Act.  Second, the letter makes abundantly clear that mandamus relief is inappropriate here, even under plaintiff's

and Congress during the period that followed the President's June 11 notification is precisely the "appropriate dialogue" and "useful communication" that Congress contemplated in passing the Act.  S. Rep. No. 110-262; see also 153 Cong. Rec. S14193-01, S14199.  In the absence of any standard by which a court could evaluate whether the President's stated reason was sufficiently explained, this Court should refrain from inserting itself in the dialogue between the two coequal political branches that the 30-day notice requirement allows, and that plainly took place here.  Cf. Natural Res. Def. Council, Inc. v. Hodel, 865 F.2d at 318-19; College Sports Council, 421 F. Supp. 2d at 67.[9]  Plaintiff's effort to establish a "clear right to relief" thus fails, and his request for mandamus relief must be denied.

---

misunderstanding of the Act's notice requirements.  It can hardly be a proper exercise of mandamus to require reinstatement so that the President can take a letter addressed to individual Members of Congress and re-address it to the President of the Senate and the Speaker of the House.

[9]While plaintiff ostensibly claims to recognize that the accuracy of the President's stated reasons is not relevant to the Court's decision, both his Amended Complaint and the papers filed in support of a preliminary injunction place material before the Court that purports to address that very question.  E.g., Am. Comp. ¶¶ 20-26.  The Court should decline to consider this material.  To the extent plaintiff seeks to transform this action from a challenge to the President's removal authority to a challenge to the reasons underlying his dismissal, this case becomes nothing more than an employment dispute that is precluded by the Civil Service Reform Act ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978) (codified as amended in scattered sections of 5 U.S.C.), which provides a comprehensive and exclusive mechanism for administrative and judicial review of disputes raised by federal employees related to personnel actions, even where, as here, an employee falls into a category that is expressly excluded from the CSRA's scheme of review.  See generally United States v. Fausto, 484 U.S. 439, 443–45 (1988); see also Kursar v. Transp. Sec. Admin., 581 F. Supp. 2d 7, 16 (D.D.C. 2008) (holding that a federal air marshal who was terminated while in a probationary position could not challenge his termination under the APA, 5 U.S.C. §§ 701-706, although he was also precluded from seeking relief under the CSRA because he did not qualify as an "employee" under 5 U.S.C. § 7511(a)(1)); Roberts v. U.S. Dep't of Justice, 366 F. Supp. 2d 13, 21-22 (D.D.C. 2005) (holding that because "Congress deliberately excluded FBI employees from the [CSRA] provisions establishing administrative and judicial review for personnel actions," FBI employees were precluded from "challeng[ing] such decisions in federal court under the APA").

**B.      Even if Plaintiff Could Establish a Clear Right to Relief, Neither the IG Act Nor Any Other Law Imposes a Clear Ministerial Duty on Defendants to Reinstate Plaintiff**

Even if plaintiff could establish a clear right to relief, his mandamus claim must fail because defendants have no clear duty to grant the particular relief that plaintiff seeks – reinstatement to his position as Inspector General.  In order for a plaintiff asserting a Mandamus Act claim to establish "a clear and certain duty to act" by the defendant public official, "'the duty to be performed [must be] ministerial" rather than discretionary.  West, 538 F. Supp. 2d at 22 (quoting 13th Reg'l Corp. v. Dep't of Interior, 654 F.2d 758, 760 (D.C. Cir. 1980)).  "Such a duty must be so plainly prescribed as to be free from doubt and equivalent to a positive command."  Consol. Edison Co., 286 F.3d at 605 (internal quotation omitted).  In other words, the law must "not only authorize the demanded action, but require it," in a manner that is "peremptory and clearly defined."  Jackson v. Holder, No. 09-1453, 2009 WL 2382949, at *1 (D.D.C. July 31, 2009) (quoting Lozada Colon v. U.S. Dep't of State, 170 F.3d 191 (D.C. Cir. 1999)).  Thus, where the duty "'depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus.'"  Id. (quoting Wilbur v. United States, 281 U.S. 206, 219 (1929)).[10]

_____

[10]Plaintiff's failure to establish a ministerial duty subjects his claim to dismissal for lack of subject matter jurisdiction as well as for failure to state a claim upon which relief may be granted. In re Cheney, 406 F.3d at 729 ("[I]f there is no clear and compelling duty under the statute as interpreted, the district court must dismiss the action [for lack of jurisdiction]."). The Mandamus Act does not itself waive the United States' sovereign immunity.  Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 901 (D.C. Cir.1996).  Moreover, because the action that, according to plaintiff, entitles him to relief – his removal – "was performed by the President, and the President is not an agency within the meaning of the" APA, 5 U.S.C. § 702, the waiver of sovereign immunity in that provision does not apply.  Swan, 100 F.3d at 981 n.4; see also Buaiz

The only action that plaintiff asks this Court to compel through mandamus is his

reinstatement as Inspector General.  Am. Compl. at 20 (requesting that the Court "direct[]

Defendants to restore [him] to his duly appointed position as Inspector General").  Plaintiff's

theory appears to be that a President's failure to notify Congress 30 days prior to the removal of

an Inspector General from office renders the Inspector General's subsequent removal "null and

void," id. ¶ 43, and that the agency's officers responsible for carrying out personnel actions have a

ministerial duty to recognize and effectuate the nullification of the President's removal in this

situation by reinstating the Inspector General,  see id. ¶¶ 44-45.

However, defendants CNCS and its employees have no clear obligation to reinstate

plaintiff.  As noted above, the President complied with the 30-day requirement here.  Even if that

were not the case, however, there is no basis to conclude that the IG Act imposes a ministerial

duty on an establishment's employees to reinstate a removed Inspector General in this

circumstance.  The 30-day notice requirement is, at most, a procedural prerequisite to removal.

The provision directs the President to "communicate . . . the reasons" for an Inspector General's

removal to Congress 30 days in advance.  5 U.S.C. app. 3 § 3(b).  Nowhere does the Act impose

a substantive "good cause" restriction on the President's power of removal, nor does it specify

that  reinstatement is necessary, or even appropriate, while the President corrects any perceived

---

v. United States, 471 F. Supp. 2d 129, 138 (D.D.C. 2007) (recognizing that the Declaratory
Judgment Act, 28 U.S.C. § 2201, contains no waiver of sovereign immunity).  A sovereign
immunity waiver is required, and plaintiff's action is therefore jurisdictionally barred, unless the
action meets the criteria for the "so-called Larson-Dugan exception," which applies when a
plaintiff seeks mandamus to "force a public official to perform a duty imposed upon him in his
official capacity."  Wash. Legal Found., 89 F.3d at 901. The D.C. Circuit has recognized that
where, as here, the defendants deny that they have the duty that the plaintiff alleges, "the question
of jurisdiction merges with the question on the merits."  Id. at 902; see also In re Cheney, 406
F.3d at 729 ("To this extent, mandamus jurisdiction under § 1361 merges with the merits.").

inadequacies in the communications to Congress.

Plaintiff argues to the contrary, suggesting that the "requirement of 'reasons' necessarily requires explaining a reasonable basis for the act, and not an arbitrary or impermissible one," Am. Comp. ¶ 40, and that, not only is notification required, but a "reasonable investigation and inquiry" is necessary "to determine the actual facts" before the President can implement a removal decision.  Id.  But plaintiff's attempt to transform the Act's procedural requirement into a substantive restriction is not supported by the text or structure of the IG Act.  Contrary to plaintiff's contention, there is no provision o f the Act that provides for judicial inquiry into the validity of the President's reasons, nor can the Act's communication requirement be read to accommodate plaintiff's desire for what would be effectively a "good cause" limitation on the President's removal power.  The President's "'power of removal from office is incident to the power of appointment,'" Swan, 100 F.3d at 979 (quoting Carlucci v. Doe, 488 U.S. 93, 99 (1988)), and the D.C. Circuit has held that courts should not interpret a statute as placing a "congressional limitation o[n] presidential action" unless "there is 'affirmative evidence' that Congress intended it, for '[w]hen Congress decides purposefully to enact legislation" that seeks to "restrict[] or regulat[e] presidential action, it must make its intent clear.'" Id. at 981 (quoting Armstrong v. Bush, 924 F.2d 282, 289 (D.C. Cir. 1991)).  That holding is particularly apt here, where Congress deliberately deleted a "good cause" limitation from the draft legislation, supra note 2; S. Rep. 95-1071, 1978 U.S.C.C.A.N. at 2701 (original removal provision did not "require[] the President to have 'cause'" before removal); S. Rep. No. 110-262 (2008) (Reform Act's revision of the removal provision did not "alter the President's ultimate authorities with respect to Executive Branch employees"), and expressly recognized the President's removal

power without any substantive restriction.  See 5 U.S.C. app. 3 § 3(b) (stating that "[a]n

Inspector General <u>may</u> be removed from office by the President." (emphasis added)).[11]

Likewise, the fact that the IG Act provision requires the President to inform Congress of

the "reasons" for the President's decision to remove does not alter its nature as a procedural

rather than substantive restriction, nor does it provide a basis for nullifying a removal in the event

that the President fails to inform Congress as required.  The text of the IG Act is silent on the

question of what should happen if the President does not provide Congress with a written

communication indicating the reasons for an Inspector General's removal 30 days before the

---

[11]The IG Act stands in sharp contrast to the statute considered by the Supreme Court in <u>Morrison v. Olson</u>, 487 U.S. 654 (1988), which expressly required "good cause" or other specified reasons for the Attorney General's removal of an independent counsel.  <u>Id.</u> at 663, 691-93 (discussing 28 U.S.C. § 596(a)(1)).  In addition, the absence of any specified term for Inspector General appointments, and the fact that Inspectors General do not serve on multi-member boards, distinguish this case from <u>Swan</u>, where the D.C. Circuit considered whether the statute governing the National Credit Union Administration ("NCUA") restricted the President from removing a holdover NCUA Board member "except for good cause."  <u>Swan</u>, 100 F.3d at 981, 986.  In dicta, the court discussed the possibility that the six-year term limit for Board members implied that Board members could not be removed during their term without good cause.  <u>Id.</u> at 982; <u>see id.</u> at 990 (Silberman, J., concurring ("We have never <em>held</em> . . . that an appointee to a multi-member regulatory agency with a term appointment enjoys tenure equivalent to the term appointee who, according to the explicit terms of the statute, may not be removed except for good cause.").  The court then held that, even assuming <em>arguendo</em> that good cause was required in order to terminate a Board member during the specified term, the requirement would end when the term ended and thus would not apply to a holdover appointee.  <u>Id.</u> at 983, 988.  As discussed, the IG Act contains no express "for good cause" restriction on the President's removal power.  <u>See</u> 5 U.S.C. app. 3.  Nor, in contrast to the NCUA statute, does it set a term limit for Inspectors General, from which a "for good cause" restriction could conceivably be inferred.  <u>Id.</u>  Indeed, in the absence of a term limit, a restriction of the kind that plaintiff proposes would in effect accord Inspectors General life tenure, a result that the Supreme Court has refused to infer absent "plain and explicit" statutory language to that effect.  <u>Shurtleff v. United States</u>, 189 U.S. 311, 316 (1903); <u>see also Swan</u>, 100 F.3d at 987 (suggesting that the grant of life tenure by Congress may be an unconstitutional intrusion on Executive authority).

removal occurs.[12]  This silence must be interpreted in light of the purpose of the 30-day notice

requirement, as discussed above, to encourage communication between the President and

Congress.  Given that purpose, should the President fail to adhere to the requirement, the proper

remedy is for Congress to ask the President to communicate his reasons for the removal decision.

This process could conceivably lead the President to delay implementing the ultimate removal.

However, regardless of how the interaction between the President and Congress plays out,

nothing in the IG Act suggests that once the President implements the removal, the removal could

be declared void or invalid.

Nor would such a construction of the Act be anomalous.  The remedy for a procedural

violation often falls far short of nullifying the ultimate action, and there may be no judicial remedy

available at all.  E.g., Gagliano v. Reliance Standard Life Ins. Co., 547 F.3d 230, 240 (4th Cir.

2008) (recognizing that an insurance plan administrator's "procedural violation" of ERISA by

failing to provide notice could not afford the plaintiff "a substantive remedy if she has no

entitlement to benefits under the terms of the Plan"); Handberry v. Thompson, 436 F.3d 52, 70

(2d Cir. 2006) ("We note at the outset that the relief sought by the plaintiffs – that the defendants

provide them with substantive educational services – hardly seems well suited to remedy a

procedural violation."); Raditch v. United States, 929 F.2d 478, 481 (9th Cir. 1991) ("A violation

--------

[12]Again, the IG Act's silence stands in contrast with the statute governing independent
counsels, which provided an express private right of action through which independent counsels
could challenge their removal, and expressly authorized the reviewing court "to grant
reinstatement 'or other appropriate relief.'"  Morrison, 487 U.S. at 663-64 (quoting 28 U.S.C. §
596(a)(3)).  Even in the independent counsel context, it is doubtful that reinstatement could have
been considered a "ministerial duty" since the statute itself recognized that reinstatement was not
mandatory and that "other . . .  relief" might instead be appropriate.  See 28 U.S.C. § 596(a)(3)
("The independent counsel may be reinstated . . . ." (emphasis added)).

of procedural rights requires only a procedural correction, not the reinstatement of a substantive right to which the claimant may not be entitled on the merits."). Here, as noted, the remedy envisioned is a political one, to be enforced by Congress.

Accordingly, there is no basis for recognizing a "ministerial duty" on the part of CNCS officials to reinstate plaintiff, even if the President failed to adhere to the 30-day notice requirement.

### C. Even If the Court Concluded that Mandamus Relief Might Be Available, It Should Decline to Grant It Here Because Such Relief Would Not Serve the Intended Purpose of the IG Act

As indicated above, even where a plaintiff satisfies the three essential prerequisites to mandamus relief, a court must still exercise its discretion in order to determine whether the "drastic" remedy of mandamus is warranted in a particular case. In re Cheney, 406 F.3d at 729. Here, even if the plaintiff succeeds in overcoming the obstacles identified above, the Court should deny mandamus relief because plaintiff's reinstatement would not serve the purpose of the IG Act; indeed, it would serve no useful purpose whatsoever. As discussed, the IG Act was intended to facilitate a dialogue between the President and Congress, and that dialogue occurred in the wake of the President's initial communication. Nothing more is appropriate here, and plaintiff's effort to take over Congress's role should be rejected.

Moreover, even if the Court might order plaintiff to be reinstated by CNCS, it would be largely an empty gesture. The President could simply once again notify Congress of his intent to remove plaintiff as Inspector General, amplifying his initial communications with reference to the June 16 letters provided to individual Members of Congress. And while plaintiff might occupy the office of Inspector General for an additional 30 days, he could once again be placed on paid

administrative leave during that period, and he could ultimately be removed at the end of that

period.  No other relief would be permissible, since the Court could not compel the President to

retain plaintiff indefinitely in the position of Inspector General against the President's will without

intruding on presidential authority.  See Shurtleff, 189 U.S. at 318; Swan, 100 F.3d at 986-87

(expressing doubt that Congress could "provide unlimited removal protection" for Presidential

appointees).

    In sum, the purpose of the Act and respect for the extraordinary nature of the mandamus

remedy counsel for the discretionary denial of mandamus relief here, allowing the President to

appoint a new Inspector General to carry out the important functions of this office.

## II.    THE DECLARATORY JUDGMENT ACT PROVIDES NO INDEPENDENT CLAIM

    Plaintiff asserts an additional claim pursuant to the Declaratory Judgment Act ("DJA"), 28

U.S.C. § 2201.  It is well established that the DJA "is not an independent source of federal

jurisdiction." C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth., 310 F.3d 197, 201

(D.C. Cir. 2002).  Moreover, the Supreme Court has recognized that the DJA is "procedural

only," Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (quoting Aetna Life

Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937)), and that it "presupposes the

existence of a judicially remediable right," Schilling v. Rogers, 363 U.S. 666, 677 (1960).  In

other words, DJA remedies are available only if a plaintiff identifies a cognizable independent

cause of action through which "'"a judicially remediable right" already exists.'"  Seized Prop.

Recovery, Corp. v. U.S. Customs & Border Prot., 502 F. Supp. 2d 50, 64 (D.D.C. 2007)

(quoting Gallucci v. Chao, 374 F. Supp. 2d 121, 128 (D.D.C. 2005)).  Thus, in Seized Prop.

Recovery, Corp., the court rejected the plaintiff's DJA claim where the plaintiff failed to "specify

any cause of action *through which* the Court may exercise subject matter jurisdiction and grant

declaratory relief." Id. Because, for the reasons described above, plaintiff cannot assert a claim

under the Mandamus Act, his DJA claim must also be dismissed.[13]

## CONCLUSION

For the foregoing reasons, this action should be dismissed in its entirety.

October 26, 2009                                  Respectfully submitted,

                                                  TONY WEST
                                                  Assistant Attorney General
                                                  CHANNING D. PHILLIPS
                                                  Acting United States Attorney
                                                  IAN HEATH GERSHENGORN
                                                  Deputy Assistant Attorney General
                                                  SUSAN K. RUDY
                                                  Assistant Branch Director

                                                  /s/ Kathryn L. Wyer
                                                  KATHRYN L. WYER
                                                  U.S. Department of Justice, Civil Division
                                                  20 Massachusetts Avenue, N.W.
                                                  Washington, DC 20530
                                                  Tel. (202) 616-8475 / Fax (202) 616-8470
                                                  kathryn.wyer@usdoj.gov
                                                  *Attorneys for Defendant*

---

[13]Because the IG Act provides no individual right or remedy to Inspectors General seeking to retain their positions against the will of the President, plaintiff could not salvage his DJA claim by asserting a private right of action directly under the IG Act, see, e.g., Am. Fed'n of Gov't Employees, 543 F. Supp. 2d at 47 (citing Alexander v. Sandoval, 532 U.S. 275, 286 (2001), and explaining that no private right of action exists if the statutory text contains neither a private right nor a private remedy); see also Tex. Border Coal. v. Napolitano, 614 F. Supp. 2d 54, 63 (D.D.C. 2009) (Where "'a statute by its terms grants no private rights to any identifiable class,'" the question of whether Congress intended the statute to be privately enforceable must be "'definitively answered in the negative.'" (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002))), and plaintiff makes no attempt to do so here.