IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GERALD WALPIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:09-1343 (RWR) |
| | ) |
| THE CORPORATION FOR NATIONAL AND | ) |
| COMMUNITY SERVICE, NICOLA O. | ) |
| GOREN, as Acting Chief Executive Officer | ) |
| thereof, RAYMOND LIMON, as Chief Human | ) |
| Capital Officer thereof, and FRANK TRINITY, | ) |
| as General Counsel thereof, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................4

    I.    THE INDEPENDENCE THAT CONGRESS GAVE INSPECTORS
          GENERAL IN THE CONDUCT OF INVESTIGATIONS DOES
          NOT VEST PLAINTIFF WITH ANY INDIVIDUAL RIGHT TO
          CONTINUED EMPLOYMENT ......................................................................4

    II.    THE PRESIDENT COMPLIED WITH THE ACT'S NOTICE
          REQUIREMENT .............................................................................................9

          A.    Plaintiff's Placement on Temporary, Paid Administrative Leave
                on June 10, 2009 Was Not a "Removal" or "Transfer" Under
                the IG Act ...........................................................................................10

          B.    Plaintiff's Challenges to the Sufficiency of the "Reasons" Set
                Forth in the President's June 11, 2009 Letter Provide No Basis
                For Relief ...........................................................................................14

    III.    PLAINTIFF FAILS TO ESTABLISH THAT DEFENDANTS HAVE
          A CLEAR, MINISTERIAL DUTY TO REINSTATE HIM AS
          INSPECTOR GENERAL ..............................................................................19

    IV.    EVEN IF THE COURT DEEMS MANDAMUS RELIEF AVAILABLE,
          IT SHOULD EXERCISE ITS DISCRETION TO DENY
          REINSTATEMENT HERE ............................................................................24

CONCLUSION ..........................................................................................................25

# TABLE OF AUTHORITIES

## CASES

Alexander v. Sandoval, 532 U.S. 275 (2001) ...............................................................8

Berry v. Reagan, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ................................21, 23

Branch v. Smith, 538 U.S. 254 (2003) (plurality) .......................................................13

College Sports Council v. GAO, 421 F. Supp. 2d 59 (D.D.C. 2006) .........................................17

Forest Grove School Dist. v. T.A., 129 S. Ct. 2484 (2009) ...............................................13

Ghaly v. U.S. Dep't of Agric., 228 F. Supp. 2d 283 (S.D.N.Y. 2002) ......................................13

Guerrero v. Clinton, 157 F.3d 1190 (9th Cir. 1998) .............................................16, 17

Humphrey's Executor v. United States, 295 U.S. 602 (1935) ....................................20, 21, 22, 23

*In re Cheney, 406 F.3d 723 (D.C. Cir. 2005) (en banc) .......................................9-10

Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) ........................................3, 19, 20

Miller v. Rosenker, 578 F. Supp. 2d 107 (D.D.C. 2008) ..............................................4

Morrison v. Olson, 487 U.S. 654 (1988) ..................................................21

Myers v. United States, 272 U.S. 52 (1925) ................................................24

*Nat. Res. Def. Council, Inc. v. Hodel, 865 F.2d, 288 (D.C. Cir. 1988) .......................2, 3, 15, 16

Oliver v. U.S. Postal Serv., 696 F.2d 1129 (5th Cir. 1983) ..................................12, 13

Shurtleff v. United States, 189 U.S. 311 (1903) ..........................................23

Swan v. Clinton, 100 F.3d 973 (D.C. Cir. 1996) ......................................20-21, 21, 23

United States v. Clarke, 628 F. Supp. 2d 1 (D.D.C. 2009) .......................................24

*West v. Jackson, 538 F. Supp. 2d 12 (D.D.C. 2008)...........................................4, 10

Wiener v. United States, 357 U.S. 349 (1958) .............................................20, 21, 23

## STATUTES

Administrative Procedure Act, 5 U.S.C. §§ 701-706 ................................................16

5 U.S.C. chapter 23 ................................................................................................12

5 U.S.C. § 2302 ......................................................................................................12

5 U.S.C. § 4301 ........................................................................................................5

5 U.S.C. chapter 75 ................................................................................................12

5 U.S.C. § 7501 ......................................................................................................12

5 U.S.C. § 7511 ........................................................................................................5

5 U.S.C. § 7512 ......................................................................................................12

5 U.S.C. § 7513 ..................................................................................................12, 13

Inspector General Act ("IG Act"), 5 U.S.C. app. 3 §§ 1-13 ........................................1

5 U.S.C. app. 3 § 3(a) ........................................................................................1, 5, 6

5 U.S.C. app. 3 § 3(b) ......................................................1, 2, 5, 6, 9, 10, 11, 14

5 U.S.C. app. 3 § 6 ..................................................................................................7

5 U.S.C. app. 3 § 11 ............................................................................................8, 9

Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat. 1101 (1978) ..................13

Civil Service Reform Act ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978)
    (codified as amended in scattered sections of Title 5 of the U.S. Code) ...................11, 13

Pub. L. No. 99-591, § 111 ......................................................................................16

Pub. L. No. 110-409, § 3(a), 122 Stat. 4302 (2008) ..................................................15

## LEGISLATIVE MATERIALS

153 Cong. Rec. S14193-01, S14199 (daily ed. Nov. 8, 2007) (statement of Sen. Lieberman) .......6

154 Cong. Rec. H9877, H9881 (daily ed. Sept. 25, 2008) (statement of Rep. Shays) ...................5

154 Cong. Rec. H9877, H9881 (daily ed. Sept. 25, 2008) (statement of Rep. Towns) .............7, 8

154 Cong. Rec. S10054, S10054 (daily ed. Sept. 29, 2008) (statement of Sen. Lieberman) ..........8

S. Rep. No. 110-262 (2008), available at LEXSEE 100 S. Rpt. 262 ...........................................6

## EXECUTIVE AND ADMINISTRATIVE MATERIALS

Executive Order ("E.O."), E.O. 12993 (Mar. 21, 1996), available at 61 Fed. Reg. 13043 .............9

LaMell v. Armed Forces Ret. Home, 104 M.S.P.R. 413 (M.S.P.B. 2007) .................11-12, 12, 13

# INTRODUCTION

Plaintiff's opposition fails to show plaintiff has met the heavy burden for establishing that he is entitled to the extraordinary remedy of mandamus.

Try as he might, plaintiff cannot establish the "clear right to relief" that is the foundation of any mandamus claim.  First, plaintiff fails to establish that the Inspector General Act ("IG Act"), 5 U.S.C. app. 3 §§ 1-13, creates for him a judicially enforceable right to continued employment whenever a plaintiff alleges that the President's notice to Congress was inadequate. Plaintiff asserts that the IG Act necessarily creates that right because – in his view – the Act requires that he be allowed to continue to function actively as Inspector General during the interim 30-day period between the President's notification and his removal.  But, nothing in the text of the 30-day notice requirement or of the IG Act as a whole supports that contention. Indeed, Congress expressly limited the ability of supervisory officials within an Inspector General's agency to take actions that effectively preclude the Inspector General from completing an investigation, see id. § 3(a), but placed no comparable restriction on the power of the President, see id. § 3(b).  The plain text of the statute thus refutes plaintiff's arguments.

Nor is plaintiff helped by his more general references to the need for independence for Inspectors General.  As the IG Act's text and legislative history make clear, the mechanism that Congress chose for monitoring the independence of Inspectors General was dialogue between Congress and the Executive Branch (precisely as happened here), not judicial oversight at the behest of individual plaintiffs.

Second, even if the IG Act vested Inspectors General with such a judicially enforceable right, plaintiff could not benefit because the President fully complied with the Act's notice

requirement here.  Plaintiff argues to the contrary, suggesting that his placement on administrative leave constituted a "removal" that triggered the 30-day notice requirement.  That is incorrect. Although plaintiff was placed on administrative leave on June 10, 2009, he was not removed from office until July 18, 2009, more than 30 days after June 11, 2009, the day the President sent his notification letter to Congress.  See Defendants' Memorandum in Support of their Motion to Dismiss ("Def. Op. Br."), at 7 & n.3.  The distinction between a "removal" or "transfer" and "placement on paid administrative leave" is well settled in employment law, and the express terms of § 3(b) of the IG Act make the 30-day notice requirement applicable only to "transfer or removal."  Again, the plain text of the statute bars plaintiff's claim for relief.

Plaintiff is also wrong to suggest that the Court should evaluate – and find wanting – the reasons for removal set forth in the President's June 11 letter.  The 30-day notice provision requires only that the President communicate his reasons for his removal of plaintiff, and the President did so in his June 11 letter.  The statute does not require any level of specificity in the President's notice or otherwise provide any standard for measuring whether the President's statement of reasons was sufficient.  Thus, there is nothing more for the Court to consider. Moreover, the D.C. Circuit has strongly cautioned courts against inserting themselves into the communicative process between the Executive Branch and Congress, noting that "congressional reporting requirements are, of course, legion in federal law," and "[w]hat is remarkable in light of these ubiquitous requirements is that petitioners have failed to provide a single pertinent authority that suggests, much less holds, that these commonplace requirements are judicially reviewable." Nat. Res. Def. Council, Inc. v. Hodel, 865 F.2d, 288, 318 (D.C. Cir. 1988).

Plaintiff likewise cannot establish the "clear duty" on the part of the Executive that is also

required for mandamus relief.  Plaintiff invokes <u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137

(1803), and subsequent cases discussing the President's appointment and removal powers.

However, nothing in these cases establishes that defendants have a clear duty to reinstate plaintiff,

even if the President had not complied with the 30-day notice requirement.  In contrast to the

cases on which plaintiff relies, the IG Act established neither a fixed term for Inspectors General

nor a good cause limitation on their removal.  Absent an express provision of this kind in the

statute, the IG Act cannot be read to impose a clear duty on defendants to return plaintiff to

office.

Likewise unpersuasive is plaintiff's contention that providing the extraordinary remedy of

mandamus in this case is the only way to render the 30-day notice requirement meaningful.  It is

for Congress, not private litigants such as plaintiff, to determine the adequacy of compliance with

notification requirements Congress imposes and to address any perceived inadequacies.  <u>Hodel</u>,

865 F.2d at 319 ("But this seems to us a judgment peculiarly for Congress to make in carrying on

its own functions in our constitutional system, not for non-congressional parties to carry on as an

ersatz proxy for Congress itself.").  Moreover, plaintiff's assertion that extraordinary relief is

required to avoid rendering the notice requirement "nugatory" rings particularly hollow here,

where the President's notice has triggered a continuing and substantial inter-branch discussion in

connection with plaintiff's removal.  As even plaintiff's Amended Complaint makes clear, in the

wake of the June 11 notice the White House provided additional reasons that would satisfy even

plaintiff's robust understanding of the notice requirements.

Finally, in light of the substantial inter-branch dialogue, it is clear that returning plaintiff to

his position would be an empty gesture, merely requiring the President to send yet another letter

to Congress reiterating the precise reasons the White House has set forth since the President's

congressional notification.  Plaintiff's suggestion that his reinstatement might somehow result in

his permanent return to the post of Inspector General is at odds with the documents attached to

plaintiff's own Amended Complaint that elaborate on, and show no signs of retreat from, the

notification.  In no event could plaintiff's hope for a Presidential change of heart justify the

extraordinary relief that he seeks.[1]

## ARGUMENT[2]

**I.  THE INDEPENDENCE THAT CONGRESS GAVE INSPECTORS GENERAL IN THE CONDUCT OF INVESTIGATIONS DOES NOT VEST PLAINTIFF WITH ANY INDIVIDUAL RIGHT TO CONTINUED EMPLOYMENT**

As explained in defendants' opening brief, plaintiff's claim does not satisfy the first

prerequisite for the extraordinary remedy that he requests – that he establish a "clear right to

relief," West v. Jackson, 538 F. Supp. 2d 12, 23 (D.D.C. 2008) – because the IG Act does not

provide him with an individual right to continued employment.  See Def. Op. Br. at 9-13.[3]

---

[1]Plaintiff attaches a new exhibit to his opposition memorandum, which, he claims, supports this Court's jurisdiction.  Pl. Opp. at 4 n.2 (indicating that the exhibit is attached "only in response to Defendants' 12(b)(1) motion").  However, plaintiff fails to identify any jurisdictional issue to which this letter could be relevant.  Indeed, while plaintiff cites the exhibit in support of the notion that the underlying causes for his removal were unjustified, he concedes that that issue is not before the Court at all, much less is it relevant to the Court's jurisdiction.  Id. at 3 ("Mr. Walpin is not asking the Court to . . . adjudicat[e] the sufficiency of the President's reasons . . . .").  Plaintiff's Exhibit A should thus be disregarded for purposes of defendants' Motion to Dismiss.

[2]Plaintiff makes no attempt to refute defendants' argument that his claim under the Declaratory Judgment Act necessarily fails if his Mandamus Act claim fails.  This argument is thus properly deemed conceded.  Miller v. Rosenker, 578 F. Supp. 2d 107, 111-12 (D.D.C. 2008).

[3]Plaintiff's contention that the IG Act vests him with a right to continued employment would actually result in plaintiff's having a *greater* level of protection of his own individual employment rights as a presidential appointee than is available to most federal employees, even though presidential appointees are expressly excluded from the principal statutory protections for

Although plaintiff purports to ground his right to relief in the text of the IG Act, his principal argument conflates two separate provisions – 5 U.S.C. app. 3 § 3(a) and § 3(b).  The 30-day notice requirement, at issue here, is set forth in § 3(b).  Yet plaintiff relies principally on language in § 3(a), which does not address an Inspector General's removal by the President at all.  In relevant part, § 3(a) states:

> Each Inspector General shall report to and be under the general supervision of the head of the establishment involved or, to the extent such authority is delegated, the officer next in rank below such head, but shall not report to, or be subject to supervision by, any other officer of such establishment.  Neither the head of the establishment nor the officer next in rank below such head shall prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation, or from issuing any subpena during the course of an audit or investigation.

5 U.S.C. app. 3 § 3(a).  Section 3(a) thus sets forth the internal chain of command within an agency that has an Inspector General, and establishes the supervisory authority of an agency head over an Inspector General and the limits of that supervisory authority.  And, as plaintiff suggests, § 3(a) limits interference with an Inspector General's conduct of audits or investigations – but only by the head of an agency (or the officer next in rank), who otherwise has general supervisory authority over the Inspector General.  See id.; 154 Cong. Rec. H9877, H9881 (daily ed. Sept. 25, 2008) (statement of Rep. Shays) ("We all agree IGs should operate independently . . . . However, inspectors general should also be part of an agency's management structure – albeit with some independence – rather than a 'fourth branch' of the Federal Government.").  By its plain language, the prohibition set forth in § 3(a) does not apply to the President, nor does it have anything to do

---

such employees.  See, e.g., 5 U.S.C. §§ 4301(2)(F) (excluding "an individual appointed by the President" from coverage under that Subchapter), 7511(b)(3) (excluding presidential appointees from administrative or judicial review of removal decisions).

with the President's removal authority, which is expressly recognized in § 3(b) ("An Inspector General may be removed from office by the President."). Indeed, elementary canons of construction require this Court to presume that Congress' inclusion of the limitation in § 3(a) and its omission of the limitation in § 3(b) is intentional, thus precluding plaintiff's effort to read the same limitation into both provisions.

Plaintiff's further arguments in support of his purported individual right to continued employment are equally unavailing. For example, plaintiff urges the Court to read an individual right to employment into § 3(b) because the 2008 amendments to the Act require notice before, rather than after, a removal or transfer occurs. Pl. Opp. at 12-13. Plaintiff argues that because the earlier version of the statute already provided an opportunity for communication between Congress and the President, the 2008 amendment must be read to provide something more – in plaintiff's view, a right to "proceed with his work" for an additional 30 days. See id. But that is wrong. Congress' acceleration of the notice requirement reflects the judgment that advance notice would operate more effectively as a catalyst to inter-branch communication and as a deterrent to unwarranted removals. See S. Rep. No. 110-262 (2008) (recognizing that the requirement would "allow for an appropriate dialogue"); 153 Cong. Rec. S14193-01, S14199 (daily ed. Nov. 8, 2007) (statement of Sen. Lieberman) (recognizing the requirement would give Congress "time to consider" the President's removal or transfer decision). That change in the timing of notice, however, does not convert a procedural requirement into a substantive restriction, nor does it vest plaintiff with a judicially-enforceable individual right to relief. Indeed, plaintiff appears to concede that Inspectors General had no individual employment rights prior to the 2008 amendments, when notice did not occur until after an Inspector General was removed.

See Pl. Opp. at 12-13.  The same is true now that the President provides notice 30 days in

advance.  The purpose of the advance-notice requirement is to facilitate inter-branch

communication before an Inspector General is permanently replaced, not to vest Inspectors

General with an individual, judicially-enforceable right to continued employment, much less the

novel right to active status that plaintiff asserts.

Plaintiff's citation of a snippet of legislative history does not support his misreading of the

text and certainly does not establish the requisite level of clarity for mandamus relief.  Plaintiff

relies on a statement by Representative Towns that the 2008 amendments to the IG Act would

give Inspectors General "the freedom to be able to move and get the things they need to get

done."  Pl. Opp. at 15 (quoting 154 Cong. Rec. at H9881 (statement of Rep. Towns)).  However,

Rep. Towns' statement appears to be focused primarily on the new IG Act provision that allows

Inspectors General to inform Congress when their budgetary requirements have not been satisfied

by their agency.  See 5 U.S.C. app. 3 § 6(f)(3)(E); 154 Cong. Rec. at H9881 (statement of Rep.

Towns) (explaining that "sometimes [Inspectors General] would be in the middle of an

investigation of some type and . . . the budget would be cut, or in some instances they were

actually fired").  Plaintiff points to no other statement in the legislative history of the IG Act, and

defendants are aware of none, that suggests that Congress intended the 30-day notice requirement

to allow Inspectors General to continue performing their duties for the 30 days until they are

removed or transferred.  To the extent the 30-day notice requirement has any connection at all to

preventing interference with specific audits or investigations, it sufficiently serves that function by

giving Congress a 30-day window to communicate with the President about a pending removal.

To be sure, some Members of Congress stated that the 2008 amendments to the IG Act,

as a whole, would protect or increase the independence of Inspectors General within the agencies where they are located, while also increasing the accountability of Inspectors General.  E.g., 154 Cong. Rec. S10054, S10054 (daily ed. Sept. 29, 2008) (statement of Sen. Lieberman); 154 Cong. Rec. at H9880 (daily ed. Sept. 25, 2008) (statement of Rep. Towns).  Nothing in these statements, however, suggests that Congress intended to grant individual Inspectors General tenure rights in their positions – nor, specifically, a right to continued active status during the interim 30-day period after the President's notification and before removal or transfer.  Rather, Congress expressly limited the 30-day notice requirement to "removals" and "transfers" and placed no restrictions on other employment actions, such as placement on paid administrative leave, even when they occur during the 30-day interim period.  And Congress expected that it, rather than this Court, would be the body to monitor and deter any perceived threats to Inspector General independence.

Finally, plaintiff cites § 11 of the IG Act, which sets forth the procedures for an Integrity Committee investigation and which expressly disclaims the creation of any enforceable right or benefit.  See 5 U.S.C. app. 3 § 11.  According to plaintiff, this provision in § 11 necessarily means that § 3(b) *does* create an enforceable right.  Pl. Opp. at 13.[4]  This contention is meritless. Section 11 sets forth a comprehensive set of policies and procedures to govern the Integrity

---

[4]To the extent plaintiff's suggestion that Congress intended § 3(b) to be "vindicated by individual suit" is taken as an argument that the provision establishes an implied private right of action, the argument must be rejected, for the reasons set forth in defendants' opening brief.  See Def. Op. Br. at 25 n.13.  Indeed, the notion that the absence of a prohibition on private enforcement is sufficient to establish that a right to private enforcement exists, see Pl. Opp. at 13 ("only one of them prohibited private enforcement"), turns the established law regarding private rights of action against the government on its head.  See Alexander v. Sandoval, 532 U.S. 275, 286 (2001) (recognizing that "private rights of action to enforce federal law must be created by Congress" and must be apparent in the statutory text).

Committee's investigation of specific allegations of wrongdoing by Inspectors General.  In that

context, Congress might reasonably have feared that, in the absence of an express provision

disclaiming the creation of private rights, a court might misconstrue the provision as providing

some form of due process protection to Inspectors General.  See 5 U.S.C. app. 3 § 11(d)(5)-(8).[5]

But Congress' express action in that narrow context does not impose by silence an individual right

in all other sections of the Act.  In stark contrast to § 11, § 3(b) establishes no comprehensive

scheme or procedures, and does not require any investigation, report, or assessment.  Rather, it

simply requires the President to inform Congress of the reasons for an Inspector General's

removal or transfer 30 days in advance.  The fact that Congress saw no need to provide a

disclaimer in § 3(b) reflects the unambiguous nature of the 30-day notice requirement.  Because

nothing in § 3(b) even remotely suggests that due process is required before an Inspector

General's removal, Congress had no need to clarify, through express statutory language, that the

provision confers no rights or benefits.

## II.    THE PRESIDENT COMPLIED WITH THE ACT'S NOTICE REQUIREMENT

Even if plaintiff were correct that the IG Act somehow vests him with a clear individual

right to continued employment, he still cannot establish a "clear right to relief," as is required in

order for a court to consider the "drastic" remedy of mandamus, In re Cheney, 406 F.3d 723, 729

---

[5]The history of Section 11 confirms this analysis.  The text that Congress inserted in § 11,
which was added to the IG Act in 2008, derives from a 1996 Executive Order ("E.O."), E.O.
12993 (Mar. 21, 1996), available at 61 Fed. Reg. 13043.  Section 7 of E.O. 12993 stated that
"[t]his order is intended only to improve the internal management of the executive branch and is
not intended to create any right or benefit, substantive or procedural, enforceable at law by a
party against the United States, its agencies, its officers, or any person."  The fact that Congress
incorporated a similar provision into § 11 primarily reflects its adherence to a preexisting
presidential text and has no bearing on the interpretation of other IG Act provisions.

(D.C. Cir. 2005) (en banc); West, 538 F. Supp. 2d at 23, because the President has complied with the IG Act.  See Def. Op. Br. at 13-17.  As explained in defendants' opening brief, the President notified Congress on June 11, 2009, that he intended to remove plaintiff from his position as Inspector General in 30 days because the President no longer had fullest confidence in plaintiff. The President's notification satisfied the IG Act's 30-day notice requirement.

A.     **Plaintiff's Placement on Temporary, Paid Administrative Leave on June 10, 2009 Was Not a "Removal" or "Transfer" Under the IG Act**

Plaintiff's initial contention is that the June 11 notice is irrelevant because his placement on paid administrative leave on June 10, 2009, constituted a "removal" or "transfer" under the IG Act that required a presidential notification 30 days in advance.  That contention is meritless.  The IG Act's 30-day notice requirement applies only when an Inspector General is "removed from office" or is "transferred to another position or location within an establishment."  5 U.S.C. app. 3 § 3(b).  The IG Act expressly excludes from the 30-day notice requirement "a personnel action otherwise authorized by law, other than transfer or removal."  Id.  The statute therefore draws a clear distinction between "remov[al] from office" and "transfer[] to another position or location" within the agency, on the one hand, and other "personnel action[s]," on the other.

Seeking to evade this plain text, plaintiff argues that his placement on paid administrative leave was *in effect* a removal or transfer.  He claims, for example, that his leave status "remov[ed] him from any ability to continue to perform his duties," Pl. Opp. at 17, and "transferred [him] out of his office and position to so-called administrative leave status," id. at 18.  But, again, the statute expressly refers to removal "from *office*" (which requires that the employee's tenure in his position is permanently ended) and transfer "to another position or location *within an*

*establishment*" (which requires that the employee is placed in another "position" working at the agency or moved to another geographic "location" where the agency has an office).  5 U.S.C. app. 3 § 3(b) (emphasis added).  In contrast to an actual removal or transfer, both of which are permanent changes and may require an employee either to seek employment elsewhere (if removed) or to relocate or assume new duties (if transferred), placement on paid administrative leave effects a temporary status, does not alter an employee's job title or designation within the agency, and does not impose affirmative obligations on an employee.[6]

Indeed, it is settled in the employment law context that "removal," "transfer," and "placement on paid administrative leave" are three separate and distinct actions, and that paid administrative leave is not a subset of transfer or removal.[7]  For example, the distinctions among these three terms have been recognized by the Merit Systems Protection Board ("MSPB") – the administrative tribunal that handles federal employment claims under the Civil Service Reform Act ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978) (codified as amended in scattered sections of Title 5 of the U.S. Code) – including in its recent decision in LaMell v. Armed Forces Ret.

––––––––––––––––––––

[6]Plaintiff also attempts to rely on the fact that Norman Eisen, Special Counsel to the President, in his June 16 letter to Senators Lieberman and Collins, stated that plaintiff "was removed." Pl. Opp. at 2, 17 (citing Def. Op. Br. Ex. E).  However, the President's June 11 letter stated quite clearly that plaintiff's removal would be "effective 30 days from today," Def. Op. Br. Exs. A, B, and Gregory Craig, Counsel to the President, referred to the President's "intent to remove" plaintiff, id. Ex. D.  Mr. Eisen's letter can only be understood as referring to the President's removal decision, and cannot be taken as a suggestion that plaintiff's placement on administrative leave qualified as a removal.

[7]Plaintiff's quotation of dictionary definitions that have no specific connection to the employment context is entirely inadequate to prove that he was removed or transferred from his position as Inspector General.  See Pl. Opp. at 18.  Defendants' reference in their opening brief to the "ordinary meaning" of the terms "removal" and "transfer," Def. Op. Br. at 15 n.6, invokes the fact that the terms are well understood in the employment context as specific references to distinct personnel actions.

Home, 104 M.S.P.R. 413, 416 (M.S.P.B. 2007).  Plaintiff cites LaMell for the proposition that

placement on paid administrative leave is actionable under the CSRA for some federal employees

where the employee's placement on paid administrative leave closely follows a proposed removal.

See Pl. Opp. at 17 n.7.  However, the MSPB made that suggestion in LaMell in connection with a

specific chapter of the CSRA, 5 U.S.C. chapter 23, which prohibits discrimination and other

specified "personnel practices" when carrying out not only "transfers" and actions under 5 U.S.C.

chapter 75, but also "other disciplinary or corrective action," 5 U.S.C. § 2302(a)(2)(A)(iii), (iv),

(b).  See LaMell, 104 M.S.P.R. at 416.  The MPSB's suggestion that  placement on paid

administrative leave may, in some circumstances, qualify as a "disciplinary or corrective action"

for purposes of 5 U.S.C. § 2302(a)(2)(A)(iii) does not in any way indicate that placement on paid

administrative leave is a "removal" or "transfer."  To the contrary, since transfers are expressly

mentioned in 5 U.S.C. § 2302(a)(2)(A)(iv), and removals are expressly mentioned in 5 U.S.C. §

7512, cross-referenced in 5 U.S.C. § 2302(a)(2)(A)(iii) ("an action under chapter 75 of this

title"), it is clear that the MSPB in LaMell recognized that placement on paid administrative leave

is neither a transfer nor a removal.

As explained in defendants' opening brief, the Fifth Circuit decision in Oliver v. U.S.

Postal Serv., 696 F.2d 1129 (5th Cir. 1983), reflects the same understanding.  Oliver held that

placement on paid administrative leave did not trigger a 30-day notice requirement that applies to

some federal employees (though not to presidentially-appointed Inspectors General) prior to their

"removal" or "suspension" (without pay).  Id. at 1131 (discussing requirements of 5 U.S.C. §§

7512, 7513); cf. 5 U.S.C. § 7501(2) (defining "suspension" as "the placing of an employee, for

disciplinary reasons, in a temporary status without duties and pay").  The import of Oliver is that

placement on paid administrative leave does not qualify as an adverse personnel action at all,

much less a "removal" or a "suspension" requiring 30 days' notice, and that where 30 days' notice

is required, an employee has no right to continue performing job-related duties during the interim

30-day period.[8]  See Oliver, 696 F.2d at 1131-32 ("Inferring a right to remain on duty during the

notice period is not the kind of protection (or tenure) that the [CSRA] was intended to grant.").

Congress, which enacted the Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat.

1101, on Oct. 12, only one day before its enactment of the CSRA as a comprehensive statutory

scheme to govern federal employment, see Pub. L. No. 95-454 (enacted Oct. 13, 1978), was

certainly aware, both in 1978 when it referred to "removal" in § 3(b) of the IG Act, and in 2008

when it added the term "transfer" to the same provision of the Act, that the terms "removal" and

"transfer" have specific meanings in the employment context.  Cf. Forest Grove School Dist. v.

T.A., 129 S. Ct. 2484, 2486-87 (2009) ("Congress is presumed to be aware of, and to adopt, a

judicial interpretation of a statute when it reenacts that law without change"); Branch v. Smith,

538 U.S. 254, 281 (2003) (plurality) ("[I]t is, of course, the most rudimentary rule of statutory

construction . . . that courts do not interpret statutes in isolation, but in the context of the *corpus*

*juris* of which they are a part, including later-enacted statutes.").

---

[8]Thus, plaintiff's characterization of Oliver, in an attempt to distinguish it from this case, is
simply wrong:  Contrary to plaintiff's contention, Oliver *did* involve "a statute prohibiting
'removal' . . . unless conditions precedent were met," see Pl. Opp. at 17 n.7, and the "condition
precedent" set forth in the CSRA includes (but goes well beyond) a 30-day notice requirement.
See 5 U.S.C. § 7513(b).  Moreover, plaintiff makes this same erroneous assertion regarding Ghaly
v. U.S. Dep't of Agric., 228 F. Supp. 2d 283 (S.D.N.Y. 2002), and LaMell, 104 M.S.P.R. at 416,
which involved the very same statutes at issue in Oliver.  See Ghaly, 228 F. Supp. 2d at 289
(citing Oliver and the provisions in 5 U.S.C. chapter 75); LaMell, 104 M.S.P.R. at 416
(recognizing that the plaintiff's claim related to 5 U.S.C. chapter 75).  Again, the fact that 5
U.S.C. § 7513 applies to "removals," but not to "paid administrative leave," is clear authority that
the two are not the same thing.

Moreover, the distinction Congress drew between removal and placement on administrative leave makes perfect sense in light of the purpose of the 30-day notice requirement. As noted, the point of the notice requirement was to facilitate a dialogue between Congress and the President prior to the permanent replacement of an Inspector General, not to impose a waiting period that would force the President to delay before taking any employment action that might affect an Inspector General.

Indeed, the contrary reading plaintiff advances would be quite extraordinary. The President would be without authority to put on paid leave even an Inspector General that the President believed was (for example) clearly abusing his investigative powers or was engaging in fraud or other misdeeds. The idea that Congress meant to require the President to stand idly by while suffering an additional 30 days of misconduct is one that defies common sense and should not be lightly imputed to Congress under any circumstances, much less when there is no indication of such an intent in the plain text.

**B.     Plaintiff's Challenges to the Sufficiency of the "Reasons" Set Forth in the President's June 11, 2009 Letter Provide No Basis For Relief**

Plaintiff next challenges the President's compliance with the Act by urging the Court to scrutinize the President's June 11 letters to Congress and evaluate whether the President's stated reason for plaintiff's removal was in fact a "reason," rather than a "conclusion." Pl. Opp. at 19.

There is no basis for plaintiff to entangle the Court in such an exercise. The language of the 30-day notice requirement does not specify how detailed the President's communication should be. All it requires is that "the President shall communicate in writing the reasons for any such removal." 5 U.S.C. app. 3 § 3(b). Thus, the statute does not provide any standard by which

the Court could measure the President's compliance.[9]  The absence of a meaningful standard, in

combination with the very nature of a congressional notice requirement, demonstrates that it is for

Congress – and Congress alone – to decide whether it wants to receive more information from the

President.  There is no role for the courts to play in that determination.

    That conclusion also follows from the D.C. Circuit's unambiguous holding in Hodel.  In

that case, plaintiffs complained that the Secretary of the Interior had failed to comply with a

statutory notice provision when "adequate explanations were not provided for the Secretary's

rejection of portions of three particular proposals."  Hodel, 865 F.2d at 318.  Holding that

petitioners' challenge was unreviewable, the Court of Appeals noted that "congressional reporting

requirements are, and heretofore have been, a management tool employed by Congress for its

own purposes"; the Court "decline[d] to take the remarkable step, rife with the danger of flooding

an already over-burdened judicial system with failure-to-report cases, of reviewing petitioners' . . .

claim when Congress has not provided for judicial scrutiny of this aspect of the interbranch

relationship."  Id. at 319.  In short, only Congress is in a position to say whether the Executive

Branch's response to a statutory requirement to provide Congress with particular information

satisfies Congress's needs.

    Plaintiff's attempts to distinguish Hodel are unpersuasive.  Plaintiff first argues that Hodel

---

[9]It is worth noting that even before the 2008 amendments to the IG Act, the President was
required to "communicate in writing the reasons" for an Inspector General's removal or transfer;
in other words, the 2008 amendments do not suggest that any greater level of detail is required in
the President's notification after the 2008 amendments took effect than was required before the
amendments.  See Pub. L. No. 110-409, § 3(a), 122 Stat. 4302 (2008).  As Mr. Eisen's letter of
June 16, 2009 to Senators Lieberman and Collins indicated, the President's June 11 notification
followed "long practice with respect to the form of such letters and the Administration's view of
the statute."  See Def. Op. Br. ex. E.

does not apply because the President "remov[ed]" plaintiff before notifying Congress.  Pl. Opp. at

20.  This is simply a restatement of plaintiff's earlier argument that his placement on paid leave

constituted a "removal," and should be rejected for the same reasons set forth above.

Plaintiff next notes that the court in <u>Hodel</u> did in fact review the defendant agency's

compliance with the National Environmental Policy Act ("NEPA") and the Outer Continental

Shelf Lands Act ("OCSLA").  Pl. Opp. at 20-21.  However, neither NEPA nor OCSLA requires

the Executive Branch to submit information *to Congress*; rather, both statutes impose

requirements on particular agency actions that are subject to review under the Administrative

Procedure Act, 5 U.S.C. §§ 701-706.  The <u>Hodel</u> court's review of the Secretary of Interior's

compliance with NEPA and OCSLA has no bearing whatsoever on whether a court, rather than

Congress, should evaluate whether Congress should be satisfied with information that Congress

requested be provided to Congress.  Thus, when the <u>Hodel</u> court did reach the latter question – in

response to a claim, which the court recognized was "unique in this litigation," that the Secretary

had failed to comply with the congressional reporting requirements of Pub. L. No. 99-591, § 111

– it unequivocally held that judicial review was unavailable.  <u>Hodel</u>, 865 F.2d at 317, 319; <u>see id.</u>

at 317 ("We are . . . being invited to sail into uncharted waters and hold, at least potentially, that

the veritable cornucopia of federal reporting requirements, involving basic interrelationships

between the Article I and Article II branches, are appropriate grist for the judicial mill.").[10]

Plaintiff's attempt to distinguish <u>Guerrero v. Clinton</u>, 157 F.3d 1190 (9th Cir. 1998), is

equally ineffective.  Plaintiff quotes the court's statement that the congressional reporting

_____

[10]Contrary to plaintiff's assertion, moreover, nowhere in <u>Hodel</u> did the court "sanction[]
review of whether the Secretary met the base requirement to provide a report at all" pursuant to
Pub. L. No. 99-591, § 111. Pl. Opp. at 21.

requirement at issue there "'triggers no legal consequences and determines no rights or obligations,'" and asserts that here, that is not the case.  Pl. Opp. at 21 (quoting Guerrero, 157 F.3d at 1195).  However, plaintiff turns the IG Act's 30-day notice requirement on its head when he suggests that the required "communication to Congress is what triggers the 30-day notice period."  Id. at 22.  To the contrary, the President's decision to remove or transfer an Inspector General is what triggers the 30-day notice requirement.  5 U.S.C. app. 3 § 3(b).  Nothing in the IG Act suggests that the President's communication has any legal consequence for plaintiff, or that this communication determines plaintiff's legal rights or obligations; indeed, like the requirement at issue in Guerrero, 157 F.3d at 1195, the IG Act's requirement is "purely informational," for Congress' use in furtherance of the goal of facilitating inter-branch communication.  As the court in Guerrero held, "Congress, not the judiciary, is in the best position to decide if it's gotten what it wants."  Id.[11]  In short, unbroken precedent makes clear that this Court may not involve itself in determining whether the President should have provided Congress with a more detailed, or different, communication on June 11, 2009.

Moreover, even if the Court could ignore that precedent and reach the question, it would have to conclude that the President's communication was sufficient – that the President's "lack of confidence" in plaintiff is a sufficient reason for discharge.  Indeed, the semantic analysis that plaintiff offers, relying on dictionary definitions to argue that the President's justification is a

---

[11]Though plaintiff refers to the "three cases" cited by defendants regarding congressional reporting requirements, Pl. Opp. at 20, plaintiff makes no attempt to distinguish the third case, College Sports Council v. GAO, 421 F. Supp. 2d 59 (D.D.C. 2006).  As explained in defendants' opening brief, the court in College Sports Council confirmed that the D.C. Circuit's opinion in Hodel controls the question of whether courts should review the Executive Branch's compliance with congressional reporting requirements, and requires the conclusion that courts should not insert themselves into such communications between the political branches.  Id. at 67.

"conclusion" rather than a "reason," Pl. Opp. at 20 n.8, only confirms that the President complied

with the 30-day notice requirement. The President's lack of confidence in plaintiff could certainly

be said to be the "underlying fact or cause," id. (quoting dictionary), for the President's decision

to remove plaintiff as Inspector General because, as a matter of logical progression, lack of

confidence caused, or resulted in, the removal. The fact that the President's lack of confidence

may, in turn, have been caused by more specific facts does not mean that the lack of confidence is

not itself a "fact or cause" underlying the removal.[12]

In addition, the level of detail in the June 11 letter is perfectly consistent with its purpose,

to facilitate communication between the President and Congress. The June 11 letter was followed

shortly by the June 16 letter attached to plaintiff's Amended Complaint, and by others in its

wake.[13] The President's notification acted, just as Congress intended, as a catalyst for this

communication, to the extent Members of Congress chose to seek additional information during

the 30-day period before plaintiff's removal took effect on July 18. Upholding the sufficiency of

---

[12]To the extent plaintiff is suggesting that every presidential decision to remove an Inspector General is motivated by the President's lack of confidence in the incumbent, that is clearly not the case. For example, the President could decide to remove an individual as Inspector General because the President would prefer to appoint that individual to a different appointed position. The President could also decide to remove an Inspector General because the public or an agency (but not the President) had lost confidence in the incumbent, where it was clear that the incumbent simply could not continue to function effectively in that role.

[13]Although it is not necessary in order for the Court to rule in favor of defendants' motion to dismiss, defendants wish to clarify that their filings here should not be misconstrued as confirming plaintiff's allegation, Pl. Opp. at 8, that the June 16 letter went only to the Senate. In fact, the June 16 letter was sent to Representatives Towns and Issa as well as to Senators Lieberman and Collins. The June 16 letter to Representatives Towns and Issa is attached to this motion as Exhibit A, and the Court may properly take judicial notice of the fact that this letter was sent. See Fed. R. Evid. 201(b)(2) (allowing for judicial notice of any fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

the President's communication is thus fully in keeping with both the text and the purpose of the IG Act.

## III.   PLAINTIFF FAILS TO ESTABLISH THAT DEFENDANTS HAVE A CLEAR, MINISTERIAL DUTY TO REINSTATE HIM AS INSPECTOR GENERAL

In addition to establishing a "clear right to relief," plaintiff must also demonstrate that defendants have a "clear duty" to provide the specific relief that he requests – reinstatement to his position.  West, 538 F. Supp. 2d at 23.  Here, again, plaintiff fails to show his entitlement to the extraordinary remedy of mandamus.  As argued in defendants' opening brief, Def. Op. Br. at 18-23, plaintiff's contention on this point – that the President's alleged failure to comply with a procedural provision requiring 30 days' notice to Congress necessarily mandates reinstatement of a presidentially-appointed officer – is insupportable.  In response, plaintiff's opposition brief places considerable reliance on the line of Supreme Court cases, beginning with the Court's decision two centuries ago in Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803), that have addressed various aspects of presidential appointment and removal authority.  However, none of these cases involved the removal of an officer from an Executive Branch position that, as is the case for Inspectors General, has no guarantee of employment for a set term of years and no good cause restriction on removal.

In Marbury, the Court considered whether a writ of mandamus was warranted where the previous President had appointed plaintiff to the position of justice of the peace for a five-year term.  Marbury, 5 U.S. at 154-55.  The Court reasoned that a commission, signed by the President, affixed with the seal of the United States, and granting a five-year term of office, gave the plaintiff a property interest in receiving the commission, as long as the plaintiff was properly

-19-

appointed in the first place.  See id. at 162 (stating, in regard to the five-year term, that "as the

law creating the office, gave the officer a right to hold for five years, independent of the

executive, the appointment was not revocable" during that five-year period).  The ministerial act

that the Court recognized was the transmission of the commission, after the appointment has been

made, to the appointed officer.  Id. at 172-73.

Unlike Marbury, plaintiff has already received his "commission" as Inspector General, in

that he assumed the position of Inspector General in 2007 following his appointment.  Thus, the

ministerial duty that the Court recognized in Marbury – delivery of the commission – has no

relevance to this case.  Moreover, also unlike Marbury, plaintiff's commission as Inspector

General did not give him any right to hold his office for any particular length of time.  See 5

U.S.C. app. 3.  Thus, again, the Court's statements in Marbury regarding the rights due to officers

appointed for a specific term of years are inapplicable here.  Plaintiff's suggestion that a 30-day

notice requirement imposes a restriction identical to that of a fixed term, and that a 30-day notice

requirement is therefore not a procedural prerequisite to removal, but a substantive grant of

"vested legal rights" in him, see Pl. Opp. at 25 n.12, cannot be taken seriously.  Marbury simply

has no bearing on whether defendants have a clear ministerial duty to reinstate plaintiff if the IG

Act's 30-day notice requirement has not been satisfied.[14]

Plaintiff's reliance on Humphrey's Executor v. United States, 295 U.S. 602 (1935),

Wiener v. United States, 357 U.S. 349 (1958), and Swan v. Clinton, 100 F.3d 973 (D.C. Cir.

_____

[14]Contrary to plaintiff's assertion, defendants do not agree that the IG Act "withdrew
Inspectors General from the category of Presidential appointees removable at will."  See Pl. Opp.
at 24.  However, the Court need not reach that question because, as set forth above, the President
complied with the IG Act's 30-day notice requirement, and, in any event, failure to satisfy the
notice requirement does not impose an obligation to reinstate a removed Inspector General.

1996), is similarly misplaced because plaintiff fails entirely to account for the overriding

distinction between those cases and the circumstances here.  In each of those cases, Congress had

imposed either a fixed term of office for the appointee, or a good cause limitation on the

appointee's removal, or both.  See Humphrey's Executor, 295 U.S. at 620 (members of FTC are

appointed "for terms of seven years" and may be removed "for inefficiency, neglect of duty, or

malfeasance in office"); see id. at 631 (identifying the issue under consideration as whether

Congress had authority "to condition the [President's removal] power by fixing a definite term

and precluding a removal except for cause"); Wiener, 357 U.S. at 352 ("Congress provided for a

tenure [for members of the War Claims Commission] defined by the relatively short period of time

during which the War Claims Commission was to operate."); Swan, 100 F.3d at 975 (Congress

established a six-year term for members of the National Credit Union Administration); see also

Morrison v. Olson, 487 U.S. 654, 691 (1988) (Congress set a "good cause" requirement for

removal of independent counsel).[15]

 Moreover, plaintiff's attempt to analogize his situation to the circumstances discussed in

Humphrey's Executor and Wiener is misguided for the additional reason that those cases, unlike

this case, concerned individuals who were not purely executive officers.  See Wiener, 347 U.S. at

354 (appointees to the War Crimes Commission performed adjudicatory functions and were

---

 [15]Contrary to plaintiff's contention, the unpublished decision in Berry v. Reagan, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), did not address a claim for mandamus relief, nor did the court grant mandamus; rather, the court issued a preliminary injunction, which, though it restricted the President from removing the plaintiffs, did not involve the analysis at issue here.  In any event, the same distinction discussed above applies in Berry.  The court in Berry recognized that, although the statute creating the U.S. Commission on Civil Rights did not prescribe a fixed term for commissioners, "it does establish a fixed life for the Commission," id. at *1, and that, "similar to the Commissioners in Weiner, supra, the limit on the life of the Civil Rights Commission would be the tenure of members of the Commission."  Id. at *4.

therefore not purely "executive"); <u>Humphrey's Executor</u>, 295 U.S. at 629 (Federal Trade

Commission performed both quasi-legislative and quasi-judicial functions).  Notwithstanding

plaintiff's assertion to the contrary, <u>see</u> Pl. Opp. at 29, Inspectors General are purely executive

officers.  Their functions – the performance of investigations and audits – are executive in nature.

5 U.S.C. app. 3 § 4.  Their offices are located within executive agencies, and they are under the

general supervision of the heads of those agencies.  5 U.S.C. app. 3 § 3(a).  Although Inspectors

General are required to keep "Congress fully and currently informed," they are also required to

keep the heads of their agencies so informed.  <u>Id.</u> § 4(a)(5).  Moreover, there is nothing unusual

about imposing congressional reporting requirements on purely executive officers.  <u>Hodel</u>, 865

F.2d at 317 ("Congressional reporting requirements are, of course, legion in federal law.").  While

Congress recognized the undoubted value in according Inspectors General a significant degree of

operational independence within their agencies, independence does not transform executive

functions into legislative or judicial tasks, as is clear from the Court's ruling in <u>Morrison</u> that

independent counsel were executive officers.  <u>See id.</u> 487 U.S. at 691 ("There is no real dispute

that the functions performed by the independent counsel are 'executive' in the sense that they are

law enforcement functions that typically have been undertaken by officials within the Executive

Branch.").

  Plaintiff attempts, in a footnote, to assert that the IG Act's omission of a fixed term of

office or good cause requirement is no barrier to the applicability of the cases listed above because

the 30-day notice requirement is equivalent to a fixed term of office.  Pl. Opp. at 28 n.15.  This

argument should be rejected out of hand.  Among other things, plaintiff occupied his office, in a

paid administrative leave status, for 30 days after the President provided notice.  Plaintiff fails to

establish that the 30-day notice requirement could impose a clear duty on defendants to reinstate

him for *another* 30 days even if the notice were procedurally deficient.  Significantly, in the cases

discussed above involving a fixed term, where the court granted relief, either the appointed

officers' terms had not expired at the time their cases were considered, or the officers sought back

pay only for the time that they would otherwise have served, according to their fixed term, had

they not been removed.  See Humphrey's Executor, 295 U.S. at 604 (plaintiff sought back pay for

deceased commissioner for the approximately four months between the time of his removal and

his death); Wiener, 357 U.S. at 350-51 (plaintiff sought back pay from the time of his removal to

the last day of existence of the War Claims Commission); Berry, 1983 WL 538, at *1 (plaintiffs

sought reinstatement for the two-week period until the Commission's expiration).  In contrast, in

Swan, the court did not grant relief precisely because there was no end date to the plaintiff's

holdover appointment, and reinstatement would effectively have granted the officer life tenure.

Swan, 100 F.3d at 987; Shurtleff v. United States, 189 U.S. 311, 318 (1903) (disapproving of the

notion that Congress could implicitly restrict the President's removal power where to do so would

grant the appointee life tenure).

Indeed, in Swan, which plaintiff appears to view as controlling, Pl. Opp. at 22, the court

recognized that, in the absence of a fixed term of office expressly established by Congress, the

plaintiff in that case had no right to continued employment, and the defendants had no ministerial

duty.  Swan, 100 F.3d at 988.  In that respect, plaintiff is correct that Swan is "analogous" to the

situation here.  Pl. Opp. at 22.  Like the holdover appointee who was the plaintiff in Swan,

Congress declined to establish any fixed term of office, or any "good cause" restriction on

removal, for Inspectors General, so there is no basis for a court to infer any right to continued

employment on the part of plaintiff.[16]  The necessary corollary is that defendants have no clear

duty to reinstate plaintiff, even if there were a procedural defect in the process of his removal.  As

explained in defendants' opening brief, there are a multitude of alternative ways to "cure" a

procedural defect, where one exists, even assuming that a "cure" is somehow required.  Def. Op.

Br. at 22.  Because reinstatement is not the only possibility, the nature of defendants' duty, if any

duty exists, cannot be deemed "clear," and plaintiff is not entitled to mandamus relief.

## IV.    EVEN IF THE COURT DEEMS MANDAMUS RELIEF AVAILABLE, IT SHOULD EXERCISE ITS DISCRETION TO DENY REINSTATEMENT HERE

Even if the Court were to disagree with all of the above, the Court should still deny

mandamus relief as a matter of judicial discretion, for the reasons set forth in defendants' opening

brief.  See Def. Op. Br. at 23-24; United States v. Clarke, 628 F. Supp. 2d 1, 10 (D.D.C. 2009)

("whether the extraordinary remedy of mandamus should issue is discretionary" with the court).

Plaintiff urges to the contrary, suggesting that the Court must grant the "extraordinary remedy" of

mandamus here because to do otherwise would render the 30-day notice requirement "nugatory."

Pl. Opp. at 30.  But that is not the case.  The President's notice triggered an extensive inter-

branch dialogue, and that congressional action is more than sufficient to give meaning to the

notice provision.  No individual right of action, much less one for mandamus, is required.

Plaintiffs' contention that denial of relief would render the notice provision "inoperative,

superfluous, void or insignificant," Pl. Opp. at 30, is thus meritless, and his effort to usurp

Congress' role should be rejected.

-------------------------------------------------------------

[16]As noted supra, note 3, the CSRA does not grant presidential appointees any form of tenure protection.  Thus, the default for purposes of statutory law is the same as it is under constitutional law, where the President's power to remove an executive officer is an inherent incident of the appointment power.  Myers v. United States, 272 U.S. 52, 176 (1925).

Finally, the extraordinary remedy of mandamus is particularly inappropriate here because little would be gained by returning plaintiff to his position.  In the wake of the President's notice, additional grounds for the removal have been provided to Members of Congress that would meet even plaintiff's expansive view of the notice requirement.  Those additional grounds provide ample refutation of plaintiff's speculation that the President may now wish to retain him as Inspector General – and even if they did not, that speculation still would not justify mandamus relief because, if the President wished to reappoint plaintiff as Inspector General, he could do so. In sum, this case does not present that rarest of circumstances where mandamus relief is appropriate, and the Court should decline to grant it.

## CONCLUSION

For the aforementioned reasons as well as those set forth in defendants' opening memorandum, this action should be dismissed.

December 7, 2009                                        Respectfully submitted,

                                                       TONY WEST
                                                       Assistant Attorney General
                                                       CHANNING D. PHILLIPS
                                                       Acting United States Attorney
                                                       IAN HEATH GERSHENGORN
                                                       Deputy Assistant Attorney General
                                                       SUSAN K. RUDY
                                                       Assistant Branch Director

                                                       /s/ Kathryn L. Wyer
                                                       KATHRYN L. WYER
                                                       U.S. Department of Justice, Civil Division
                                                       20 Massachusetts Avenue, N.W.
                                                       Washington, DC 20530
                                                       Tel. (202) 616-8475 / Fax (202) 616-8470
                                                       kathryn.wyer@usdoj.gov
                                                       *Attorneys for Defendant*