UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
GERALD WALPIN,                )
                              )
          Plaintiff,          )
                              )
     v.                       )     Civil Action No. 09-1343 (RWR)
                              )
CORPORATION FOR NATIONAL,     )
AND COMMUNITY SERVICE et al., )
                              )
          Defendants.         )
_____)

## MEMORANDUM OPINION

Plaintiff Gerald Walpin brought this action against the Corporation for National and Community Service ("CNCS") and three of its officers, seeking an order directing the defendants to restore Walpin to his previous position as the Inspector General of the CNCS, and a declaratory judgment that the procedure used to remove Walpin from office violated the Inspector General Reform Act ("IGRA"), 5 U.S.C. app. 3, §§ 1-13.  The defendants have moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Walpin's amended complaint, arguing that the court lacks subject matter jurisdiction to hear Walpin's claim, and that Walpin fails to state a claim for which relief can be granted.  Walpin has cross-moved for summary judgment, arguing that there are no material facts in dispute, and that he is entitled as a matter of law to a writ of mandamus reinstating him to his position as Inspector General.  Because Walpin fails to

-2-

state a claim for which relief can be granted, his amended
complaint will be dismissed.

<u>BACKGROUND</u>

In 2007, Walpin was appointed as the Inspector General of
CNCS, a position he would hold until 2009.  (Am. Compl. ¶¶ 2-3.)
The CNCS Office of Inspector General ("OIG") conducts and
supervises audits and investigations of CNCS's programs and
operations, and uses the results to recommend policies.  (Am.
Compl. ¶ 7.)  In May 2009, Walpin made a presentation to the CNCS
board of directors informing them that after the departure of the
previous CNCS chief executive officer, there had been a change in
the culture, enforcement of rules, and attitude at CNCS toward
the OIG, and that the General Counsel of CNCS had become
adversarial to the OIG.  (<u>Id.</u> ¶ 26.)

According to the amended complaint, on June 10, 2009, Walpin
received a telephone call from Norman Eisen, President Obama's
special counsel, who informed Walpin that if he did not tender
his resignation in one hour, he would be fired.  Walpin asked for
more time to consider the request, but Eisen responded that
Walpin would be removed as Inspector General anyway.  (Am. Compl.
¶ 29.)  On the same night, Walpin alleges, CNCS terminated his
access to his staff, his office, and his OIG electronic mail
account, and placed him on administrative leave with pay.  (<u>Id.</u>
¶¶ 5, 7, 33, 41.)  On June 11, 2009, President Obama sent a

letter to both Houses of Congress, addressed to Vice President
Biden and to Speaker Pelosi, informing them that he was
"exercising [his] power as President to remove [Mr. Walpin] from
office . . . effective 30 days from today" because he "no longer"
had "the fullest confidence in" Mr. Walpin.  (Am. Compl. ¶ 30;
Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") Exs. A,
B.)

Senator Chuck Grassley wrote a letter to the President that
same day stating that he was "deeply troubled" about the
"ultimatum" given to Walpin, and urging the President to review
the IGRA before removing any Inspector General.  Gregory Craig,
the Counsel to the President, wrote a letter responding to
Senator Grassley's concerns informing him that Walpin had been
suspended with pay, that Congress was notified earlier that day
of the intent to remove Walpin from his post, and that the
rationale for Walpin's suspension and imminent removal was that
"the President does not have full confidence in [Walpin.]"  (Am.
Compl. ¶¶ 32-33; Defs.' Mem. Ex. D.)  In the following days,
Senator Claire McCaskill called for the White House to provide a
more substantive rationale for its action, and Senators Joseph
Lieberman and Susan Collins inquired about the propriety of
removing Walpin.  (Am. Compl. ¶¶ 34, 35.)  Eisen responded by
letter stating that the CNCS' Board of Directors requested a
review of Walpin following a meeting where Walpin was "confused,

-4-

disoriented, unable to answer questions and exhibited other behavior that led the Board to question his capacity to serve" as Inspector General. (Am. Compl. ¶¶ 35, 36; Defs.' Mem. at 15, Ex. E.) Senators Orrin Hatch and Michael Enzi called for a Senate hearing about the removal. (Am. Compl. ¶ 39.)

Walpin filed his amended complaint in July 2009, seeking a writ of mandamus ordering the defendants to reinstate Walpin as the Inspector General of the CNCS, and a declaratory judgment stating that the procedure used to terminate his employment as the Inspector General violated the notice requirements of the IGRA. (Am. Compl. ¶¶ 42-49.) Walpin alleges that he was removed on June 10, 2009, and that the President had violated IGRA's requirement that both Houses of Congress be notified of the reasons for the removal no later than 30 days before the removal. (Id. ¶¶ 4, 36, 41.) The defendants have moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Walpin's amended complaint for lack of subject matter jurisdiction and failure to state a claim, on the grounds that the amended complaint fails to meet the standard necessary for mandamus, and that the President complied with the notice requirement set forth in the IGRA. (Defs.' Mem. at 1-4.) Walpin opposes and cross-moves for summary judgment.

-5-

DISCUSSION

Walpin seeks, in part, mandamus.

> In resolving a motion to dismiss an action for relief
> in the nature of mandamus, courts have characterized
> the issue as involving both a jurisdictional and a
> merits inquiry because, in determining whether the
> court has jurisdiction to compel an agency or official
> to act, the court must consider the merits question of
> whether a legal duty is owed to the plaintiff under the
> relevant statute.

Auburn Regional Medical Center v. Sebelius, 686 F. Supp. 2d 55,
62 (D.D.C. 2010) (treating a defendant's motion to dismiss a
mandamus action for lack of jurisdiction as one for failure to
state a claim) (citing In re Cheney, 406 F.3d 723, 729 (D.C. Cir.
2005) (noting that "mandamus jurisdiction . . . merges with the
merits")).  Therefore, the defendants' motion will be treated as
one to dismiss for failure to state a claim.

A party may move under Federal Rule of Civil Procedure
12(b)(6) to dismiss a complaint for failure to state a claim upon
which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  "To
survive a motion to dismiss, a complaint must contain sufficient
factual matter, acceptable as true, to 'state a claim to relief
that is plausible on its face.' . . .  [A plaintiff must plead]
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)
(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556
(2007)).  "[A] court 'must treat the complaint's factual

-6-

allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 165 (D.C. Cir. 2003) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  However, a court need not accept legal conclusions cast as factual assertions.  Peavey v. Holder, 657 F. Supp. 2d 180, 185 (D.D.C. 2009) (citing Iqbal, 129 S. Ct. at 1950).

"In deciding a motion brought under Rule 12(b)(6), a court does not consider matters outside the pleadings, but a court may consider on a motion to dismiss 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]'"[1] Winston v. Clough, Civil Action No. 07-1411 (RWR), 2010 WL 1875626, at *4 (D.D.C. May 11, 2010) (quoting Hinton v. Corr. Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (quoting Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998))).

---

[1] For example, the defendants produced in their motion the President's letter to Vice President Biden and Speaker Pelosi and the Eisen letter to Senators Lieberman and Collins to which the amended complaint referred.  (Am. Compl. ¶¶ 30, 35, 36.)

-7-

I.   MANDAMUS

A mandamus action is available to compel an "officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff." <u>See</u> 28 U.S.C. § 1361.  Mandamus relief should be granted only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." <u>Council of and for the Blind of Delaware County Valley v. Regan</u>, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (en banc).  "[T]hose invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary." <u>In re Cheney</u>, 406 F.3d 723, 729, (D.C. Cir. 2005).  Where the action a plaintiff seeks to compel is discretionary, he has no clear right to relief and mandamus is not an appropriate remedy. <u>See</u>, <u>e.g.</u>, <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984).

The defendants advance several arguments as to why Walpin has failed to state a claim for mandamus relief.  They assert that the IGRA does not guarantee Inspectors General an individual right to continued employment when the notice of separation that is given to Congress is inadequate.  (Defs.' Mem. at 9, 12.) According to the defendants, Congress intended for the IGRA to facilitate dialogue between the President and Congress before the

-8-

removal of Inspectors General, not to grant standing to a removed Inspector General to bring a legal action alleging violations of IGRA's requirements.  Citing <u>National Resources Defense Council v. Hodel</u>, 865 F.2d 288, 318-19 (D.C. Cir. 1988), the defendants also argue that where Congress has requested an explanation from the Executive Branch, unless Congress has set forth specific standards for compliance that are judicially determinable, the determination of whether the Executive's explanation is sufficient should be left to Congress.  (<u>Id.</u> at 11-12.)  The defendants argue that, in any event, the undisputed facts demonstrate that the President complied with the IGRA's 30-day notice and explanation requirement and that Walpin was not removed on June 10, 2009 as he claims.

Walpin argues that the IGRA did in fact create an individually enforceable right to continued employment because the purpose of the IGRA was to further increase the independence of the Inspectors General.  He adds that his being placed on administrative leave with pay and being denied access to his office and staff for what the President explained simply as a lack of confidence in Walpin was indeed a removal without reason and with no 30-day prior notice in violation of the IGRA.

A.   <u>Clear right to relief</u>

The Inspector General Act of 1978, as amended by the IGRA, provides for an OIG to be attached to each entity listed in

5 U.S.C. app. 3 § 12(2), one of which is CNCS.  5 U.S.C. app. 3

§§ 1-13.  "An Inspector General may be removed from office by the

President."  Id. § 3(b).  Before 2008, the Act stated that "[t]he

President shall communicate the reasons for any such removal to

both Houses of Congress."  Inspector General Act of 1978, Pub. L.

No. 95-452, § 3(b), 92 Stat. 1101 (1978).  In 2008, Congress

passed the IGRA, by amending the Inspector General Act to state

that:

> If an Inspector General is removed from office or is
> transferred to another position or location within an
> establishment, the President shall communicate in
> writing the reasons for any such removal or transfer to
> both Houses of Congress, not later than 30 days before
> the removal or transfer.  Nothing in this subsection
> shall prohibit a personnel action otherwise authorized
> by law, other than transfer or removal.

5 U.S.C. app. 3 § 3(b).

Walpin has not identified any text in the IGRA which

explicitly creates a cause of action for an aggrieved Inspector

General, nor has he presented any authority demonstrating that

Congress drafted the IGRA with the intent to give individual

Inspectors General an enforceable right to continued employment.

In its report regarding the IGRA, the Senate Committee on

Homeland Security and Governmental Affairs described the purpose

of the IGRA:

> The bill includes a requirement that the President or
> appropriate agency head notify Congress 30 days before
> transferring or removing an Inspector General.  *This
> would allow for an appropriate dialogue with Congress*
> in the event that the planned transfer or removal is

-10-

> viewed as an inappropriate or politically motivated
> attempt to terminate an effective Inspector General.
> As part of this advance notice, the Administration
> would be required to supply written reasons for the
> planned transfer or termination.  This advance notice
> provision was widely endorsed by the IG community as a
> useful deterrent against improper intimidation or
> dismissal.  By contrast, the Inspectors General were
> divided over proposals to create fixed terms for IGs
> with dismissal only "for cause." . . .  While we hope
> that this advance notice will encourage useful
> communication between Congress and the Executive Branch
> on IG performance and serve as an effective deterrent
> against improper terminations, we note that *the
> provision does not alter the President's ultimate
> authorities with respect to Executive Branch employees*.

S. Rep. No. 110-262, at 5-6 (2008) (emphasis added).  In other

words, the IGRA enhances the independence of Inspectors General

by giving Congress a mechanism by which it receives advance

notice that the President would be removing an Inspector General,

allowing Congress, not the Inspector General himself, to act by

communicating with the President.

The June 11, 2009 letter notified Congress that Walpin would

be removed in 30 days.  It afforded the Congress its opportunity

to communicate with the President if Congress felt as though the

independence of the Inspectors General altogether, or even the

independence of the Inspector General of CNCS individually, was

threatened by Walpin's removal.  Indeed, the notice requirement

created by the IGRA generated here the very Congressional

involvement and inter-branch discussion the law was intended to

facilitate, with communications between Craig and Senator

Grassley, between Eisen and Senators Lieberman and Collins (see

-11-

Am. Compl. ¶¶ 32-33; Defs.' Mem. Ex. D, Ex. E), and even among Senators themselves. (See Am. Compl. ¶ 39.) As for the President's reasons for his action, the Senate report on the IGRA emphasized that Congress expressly did not include in the IGRA a requirement that the President could remove Inspectors General only for cause. While Walpin complains that the President's rationale was insufficient, Walpin fails to show how the IGRA provides any sort of criteria that would allow a court to make that determination. See College Sports Council v. Gov't Accountability Office, 421 F. Supp. 2d 59, 67-68 (D.D.C. 2006) (granting the defendant's motion to dismiss a claim that an agency's report was insufficient, where the statute was devoid of a provision creating a private cause of action).

B. No duty to act

The defendants argue that even if Walpin could show that the IGRA creates an individually enforceable right to continued employment, Walpin has not demonstrated that they have a ministerial, non-discretionary duty to reinstate him, particularly where he has not shown that the President failed to comply with the IGRA's notice requirement. Walpin argues that the President removed Walpin on June 10, 2009 when Walpin was placed on administrative leave with no prior 30-day notice to Congress (Pl.'s Opp'n at 18-19), creating a clear duty for

defendants to disregard the President's notice and re-instate Walpin.

To establish a clear and certain duty to act, a plaintiff must show a duty so plainly prescribed as to be free from doubt. Lozado Colon v. U.S. Department of State, 170 F.3d 191, 194 (D.C. Cir. 1999).  Where a duty depends on a statute or statutes the construction or application of which is not free from doubt, it involves "the character of judgment or discretion which cannot be controlled by mandamus."  Wilbur v. United States, 281 U.S. 206, 219 (1929).

Walpin does not show that there is no doubt that his placement on administrative leave with pay was a transfer or removal from office.  The IGRA states specifically that "[n]othing in this subsection shall prohibit a personnel action otherwise authorized by law, other than transfer or removal." 5 U.S.C. app. 3 § 3(b).  Walpin's construction of "transfer or removal" as encompassing his being placed on administrative leave with pay is not an obvious reading of the terms.  The Office of Personnel Management's regulations pertaining to Civil Service employment define "removal" as "the involuntary separation of an employee from employment with an agency."  5 C.F.R. § 432.103. At least one court has held that placing an employee on administrative leave with pay did not constitute a "removal." Oliver v. United States Postal Service, 696 F.2d 1129, 1131 (5th

-13-

Cir. 1983), held that civil service regulations issued by the
Office of Personnel Management that precluded "removal or
suspension" without 30 days notice were not violated when the
plaintiff was placed on administrative leave with pay without
notice.  Similarly, <u>Ghaly v. United States Dep't of Agric.</u>, 228
F. Supp. 2d 283, 289 (S.D.N.Y. 2002) held that placing the
plaintiff on administrative leave with pay did not constitute an
"adverse action" or a "suspension."  While those cases did not
involve Inspectors General, they demonstrate at minimum that
Walpin's construction of "removal or transfer" was not certain or
free from doubt when Walpin was placed on administrative leave
with pay on June 10, 2009.  Accepting Walpin's amended complaint
as true, Walpin has not shown that he was removed or transferred
that day such that the defendants had a clear, unmistakable duty
to reinstate him as Inspector General based upon the President's
purported failure to comply with the IGRA.

II.  DECLARATORY JUDGMENT

    Walpin also seeks a declaratory judgment under the
Declaratory Judgment Act, 28 U.S.C. § 2201(a).  "The Declaratory
Judgment Act states that '[i]n a case of actual controversy
within its jurisdiction . . . any court of the United States
. . . may declare the rights and other legal relations of any
interested party seeking such declaration, whether or not further
relief is or could be sought.'"  <u>Boone v. MountainMade Found.</u>,

684 F. Supp. 2d 1, 12 (D.D.C. 2010) (quoting 28 U.S.C.
§ 2201(a)).  In general, a count for a declaratory judgment "is
not cognizable as a separate cause of action, but is more
properly included in the[] prayer for relief." Bridges v. Blue
Cross & Blue Shield Ass'n, 935 F. Supp. 37, 45 (D.D.C. 1996); see also
United States v. Instruments, S.A., 807 F. Supp. 811, 814 (D.D.C.
1992).  "Declaratory Judgment Act remedies are available only if
'a judicially remediable right' already exists." Seized Prop.
Recovery, Corp. v. United States Customs & Border Prot., 502 F.
Supp. 2d 50, 64 (D.D.C. 2007) (quoting Gallucci v. Chao, 374 F.
Supp. 2d 121, 128 (D.D.C. 2005)).  "Accordingly, courts have
broad discretion to decline to enter declaratory judgments."
Boone, 684 F. Supp. 2d at 12.

The defendants have moved to dismiss Count II of the amended
complaint.  They argue that the Declaratory Judgment Act does not
provide an independent cause of action, and because Walpin has no
right to mandamus relief, his derivative count seeking a
declaratory judgment should be dismissed.

A court may dismiss as moot a claim for declaratory relief
where the claim duplicates or is wholly subsumed by another claim
that is dismissed. Boone, 684 F. Supp. 2d at 12 (dismissing the
plaintiffs' claim seeking a declaratory judgment that their
actions constituted protected activity under the False Claims
Act, where the plaintiffs' False Claims Act claims were

-15-

dismissed).  Here, Walpin's claim for a declaratory judgment is
wholly subsumed by his claim for mandamus relief.  In addition,
Walpin makes no attempt to rebut or address the defendants'
motion on this issue, and thus has waived or conceded the issue.
See Bonaccorsy v. D.C., 685 F. Supp. 2d 18, 24 (D.D.C. 2010)
(citing CSX Transp., Inc. v. Commercial Union Ins., Co., 82 F.3d
478, 482-83 (D.C. Cir. 1986)).  Therefore, Count II of Walpin's
amended complaint also will be dismissed.

<u>CONCLUSION</u>

Walpin has not pled facts meeting the steep showing
necessary for mandamus, rendering his claim seeking a declaratory
judgment moot.  Therefore, the defendants' motion to dismiss
Walpin's amended complaint will be granted.  An appropriate order
accompanies this memorandum opinion.

SIGNED this 17th day of June, 2010.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge